Jose GOUVEIA, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 91–2022.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1992.

Decided Dec. 7, 1992.

Mark L. Galvin, Providence, R.I., for petitioner.

Charles E. Pazar, Atty., Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Washington, D.C., were on brief, for respondent.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, SELYA, Circuit Judge.

SELYA, Circuit Judge.

Petitioner, Jose Sidonio de Gouveia (Gouveia), seeks review of an order of the Board of Immigration Appeals (the Board) denying his application for a waiver of deportation under section 212(c) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1182(c) (1988), and ordering his deportation to Portugal. We have jurisdiction under 8 U.S.C. § 1105a(a) (1988), which provides for judicial review of final deportation orders. After careful perscrutation of the record and the applicable law, we uphold the Board's order.

## I. BACKGROUND

Petitioner is a forty-four-year-old native of Portugal who entered this country as a lawful permanent resident in 1975. Roughly twelve years later, he was charged with, and pleaded guilty to, two counts of rape of a child under sixteen, two counts of indecent assault and battery of a child under fourteen, and one count of indecent assault and battery of a child over fourteen. This misconduct, which involved petitioner's stepdaughters, occurred over a three-year span.[1] Following his guilty plea, petitioner was sentenced to a fifteen-year prison term. He was paroled after serving nineteen months and is currently on probation.

In August of 1988, the Immigration and Naturalization Service (INS) commenced deportation proceedings against petitioner pursuant to section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988). Although conceding deportability on the ground that he had been convicted of crimes involving

---

1. When the abuse began, the stepdaughters were    ages eight and eleven.

moral turpitude, petitioner sought a waiver of deportation under section 212(c).

## II. THE LEGAL FRAMEWORK

■ The Board has discretionary authority to grant section 212(c) waivers. In deciding whether to exercise that discretion, it must balance the "social and humane" factors supporting the application against adverse factors favoring deportation. The factors that should be considered before granting a waiver were discussed in *Matter of Marin*, 16 I. & N.Dec. 581 (BIA 1978).[2] Factors supporting a waiver include such things as (1) family ties within the United States; (2) residence of long duration in the United States; (3) evidence of hardship to petitioner or petitioner's family if deportation occurs; (4) service in the United States Armed Forces; (5) a steady employment history; (6) the existence of property or business ties in this country; (7) community service; (8) rehabilitation; and (9) any other evidence fairly indicating petitioner's good character. *See id.* at 584–85. Factors which will tend to support a denial of discretionary relief include such things as (1) the serious nature or aggravating circumstances of the particular grounds for deportation; (2) proof of additional immigration violations; (3) petitioner's overall criminal record, including its recency and gravity; and (4) any other evidence fairly indicating bad character or adumbrating petitioner's undesirability as a resident. *See id.* at 584. The presence of any one of these negative factors may be a sufficient basis for withholding relief in an individual case. *Id.*

When a serious crime has been committed, it is incumbent upon a petitioner not only to demonstrate that favorable factors preponderate but also to present "unusual or outstanding equities" as a prerequisite for a waiver of excludability. Withal, even the presence of preponderant equities or equities that in the abstract could qualify as "unusual" or "outstanding" does not compel the Board to grant relief. *See Hazzard v. INS*, 951 F.2d 435, 438 (1st Cir. 1991); *Joseph v. INS*, 909 F.2d 605, 607 (1st Cir.1990).

## III. PRIOR PROCEEDINGS

Gouveia's case was heard in the first instance by an Immigration Judge (IJ). The evidence showed that petitioner, who lives with his mother and stepfather, had not left the United States since his arrival in 1975; his extended family, including his mother, son, daughter, grandchild, and four sisters, resides here; he has been continuously employed since arriving in this country (except for the period of his incarceration); he makes periodic support payments for his daughter's behoof under the terms of a divorce decree; he attends weekly counseling sessions; and he participates in community service programs. The IJ also received into evidence favorable letters from petitioner's probation and parole officers, parish priest, and sex-abuse counselor, among others.

Despite his guilty plea, petitioner contended at the immigration hearing that, although he touched his stepdaughters' breasts and genitalia, he never engaged in sexual intercourse with them. He said that he entered a guilty plea for two main reasons: (1) to obtain a shorter sentence, and (2) because he believed that, under the rape counts, he was being charged with merely touching his victims rather than with intercourse. In support of this story, petitioner's sister testified that he never raped the girls.

The IJ credited Gouveia's account and granted a waiver. On INS's appeal, the Board scrutinized the record *de novo* and reached an opposite result. It determined, *inter alia*, that the IJ misapprehended the unusual or outstanding equities test, and, moreover, that he erred in going behind petitioner's conviction to find as a fact that

---

**2.** At least seven circuits have explicitly approved *Marin*'s formulation of an approach to evaluating petitions for relief under section 212(c). *See Hazzard v. INS*, 951 F.2d 435 (1st Cir.1991); *Montilla v. INS*, 926 F.2d 162 (2d Cir.1991); *Ashby v. INS*, 961 F.2d 555 (5th Cir.1992); *Aki-* *nyemi v. INS*, 969 F.2d 285 (7th Cir.1992); *Ayala–Chavez v. INS*, 944 F.2d 638 (9th Cir.1991); *Nunez–Pena v. INS*, 956 F.2d 223 (10th Cir.1992); *Blackwood v. INS*, 803 F.2d 1165 (11th Cir. 1986).

petitioner did not have sexual intercourse with his stepdaughters. Gouveia now seeks review of the Board's order.

## IV. ANALYSIS

Although petitioner assigns fivefold error to the Board's order, we need not tarry. Instead, we pause only long enough to explain why each of these objections is without merit.

### De Novo Review

■ First, Gouveia disparages the Board's power to conduct a *de novo* review in this case. His decrial is unavailing. It is settled beyond cavil that the Board is not required to defer to an immigration judge's findings of fact or conclusions of law in a deportation/waiver case, and may, if it chooses to do so, review the record *de novo.* *See Martinez v. INS,* 970 F.2d 973, 974 (1st Cir.1992); *Cordoba–Chaves v. INS,* 946 F.2d 1244, 1249 (7th Cir.1991). Nothing about this case warrants a departure from this firmly established tenet.

### Collateral Attack

■ The Board did not err in determining that the IJ acted extrajudicially when he found that petitioner had not raped his stepdaughters. Criminal convictions cannot be collaterally attacked during immigration proceedings. *See De La Cruz v. INS,* 951 F.2d 226, 228 (9th Cir.1991); *Trench v. INS,* 783 F.2d 181, 184 (10th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986).

Before leaving this point, we sound a note of caution. The unusual or outstanding equities test requires that a balance be struck. In order to accomplish this balancing, the nature and gravity of the conviction(s) undergirding the deportation proceedings must be scrutinized. Because a label alone is insufficient to index the severity of a particular criminal act, a judge must necessarily be free to inquire into the circumstances surrounding the commission of the crime(s). Thus, the rule prohibiting collateral attack on criminal convictions does not preclude the decision-maker from ascertaining the context in which a criminal act occurred or from accepting evidence about mitigating circumstances which may surround a conviction. *See Matter of Roberts,* Int.Dec. 3148, p. 8 (BIA 1991).

■ Applying these principles to Gouveia's case, it would have been well within the IJ's proper province to hear and consider evidence of circumstances surrounding Gouveia's commission of the crimes, such as whether he suffered from an identifiable mental illness at the time of the abuse, in an attempt to mitigate the offenses' gravity. It was not within the IJ's province, however, to reexamine the question of whether the crimes actually occurred. An immigration judge cannot substitute his judgment for that of the criminal courts in order to determine core questions of guilt and innocence.[3]

Put another way, petitioner, in pleading guilty to the rape charges, admitted the central facts contained in the indictment, and the IJ was powerless to gloss over those admissions. Hence, the IJ's factual finding that petitioner did not commit rape was *ultra vires* and the Board was fully justified in overturning it.

### Applicability of Test

■ Noting that the unusual or outstanding equities test has most often been applied to drug offenders, Gouveia asserts that the test is inapposite in his case. He is wrong. The need to demonstrate unusual or outstanding equities is not triggered exclusively by the commission of crimes involving drugs. The requirement applies with full force to other types of serious crimes. *See Cordoba–Chaves,* 946 F.2d at 1248 (requiring demonstration of increased equities by waiver applicant convicted of murder). Gravity, not narcotics, pulls the trigger and brings the higher "unusual or outstanding equities" standard into play. *See Matter of Buscemi,* 19 I. & N.Dec. 628, 633 (BIA 1988).

■ In this case, to state the rule is to defeat petitioner's objection. A sustained

---

**3.** A convicted felon may, of course, apply to the courts for post-conviction relief in an effort to set aside a criminal conviction. Here, however, petitioner made no such attempt.

pattern of molestation, directed toward children of tender years by an individual with responsibility for their welfare, is a matter of the utmost gravity. Thus, the Board acted providently when it required petitioner to show unusual or outstanding equities as a precondition to a waiver of excludability.

### Lack of Rehabilitation

■ Petitioner suggests that the Board erred in finding incomplete rehabilitation and considering this perceived deficiency as a significant factor supporting the denial of a waiver. The touchstone of petitioner's argument is that, since the IJ's finding of successful rehabilitation was itself supported by substantial evidence, the Board's contrary determination must not be supported by substantial evidence. However, this syllogism reflects a profound misunderstanding of the substantial evidence rule.

The axiom that a court must accept the Board's factual determinations so long as they are supported by substantial evidence means that the record must contain reliable evidence from which a rational mind could arrive at such a determination. *See Martinez*, 970 F.2d at 974; *see also Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Substantial evidence is something less than the weight of the evidence. *See Consolo*, 383 U.S. at 620, 86 S.Ct. at 1026. Thus, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (citations omitted). It follows, then, that the two conflicting findings anent rehabilitation (the IJ's and the Board's) may both have been supported by the requisite evidentiary quantum, notwithstanding that they were polar opposites.

■ Our interest, of course, centers upon the Board's factfinding. Applying the correct standard of review, we conclude that its resolution of the rehabilitation

point was supported by substantial evidence. Petitioner pleaded guilty to rape, thereby admitting the central facts contained in the indictment. In weekly counseling sessions thereafter, he reportedly took full "responsibility for his offenses." In the course of the ensuing deportation proceedings, he abruptly changed his tune and, at what the Board described as the "11th hour," adamantly denied raping the girls. The Board concluded that these denials were "indicative of the [petitioner's] failure to take responsibility for his actions, a necessary first step . . . in attaining true rehabilitation." This conclusion, albeit not inevitable, flows rationally from the foregoing facts. *Cf., e.g.,* U.S.S.G. § 3E1.1 (providing for reduction in offense level if a defendant recognizes and affirmatively asserts personal responsibility for the offense of conviction); *United States v. Sklar*, 920 F.2d 107, 115–16 (1st Cir.1990) (exploring interrelation, under the federal sentencing guidelines, between a defendant's efforts at rehabilitation and his acceptance of responsibility).[4]

### Calibration of the Scales

■ Finally, petitioner asserts that the Board abused its discretion in weighing the evidence by underestimating petitioner's equities. We review the Board's discretionary decisions respectfully. Unless the final outcome strikes us as "arbitrary, capricious, or an abuse of discretion," we will not interfere. *Hazzard*, 951 F.2d at 438. In short, a decision to deny a section 212(c) waiver will be upheld "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Martinez*, 970 F.2d at 974 (citation omitted).

In this case, Gouveia claims that the Board failed adequately to consider his outstanding equities. We are not persuaded. The Board's decision makes manifest that it appropriately considered the entire panoply of positive and negative factors in declining to grant a waiver. For example, the Board took into account petitioner's

---

**4.** We hasten to add that lack of rehabilitation was far from the only reason cited by the Board in denying relief. While the Board did find that petitioner was inadequately rehabilitated, its decision rested mostly on the gravity of petitioner's felonious acts.

familial equities, sustained employment history, lengthy period of residency, and numerous positive character references. It conceded that these items weighed heavily in his favor.[5] It decided, nonetheless, that petitioner's equities did not sufficiently tip the scales.

This was a judgment call, pure and simple. Here, as in the past, see, e.g., Martinez, 970 F.2d at 975; Joseph, 909 F.2d at 607, we refuse to second-guess the Board on the manner in which it weights different factors when arriving at its ultimate decision. Especially given the heinous nature of petitioner's crimes, we cannot say that the Board acted arbitrarily either in deciding that petitioner's equities were insufficient to overbalance his criminality or in refusing to extend the olive branch of discretionary relief to him.[6]

*The petition for review is denied and dismissed. The decision and order of the Board of Immigration Appeals is affirmed.*

---

5. The Board also considered, but declined to give great weight to, Gouveia's attendance at counseling sessions and in community service endeavors, reasoning that the conditions of petitioner's probation compelled his participation in these activities.

6. Petitioner argues that his case is virtually identical to *Diaz–Resendez v. INS*, 960 F.2d 493 (5th Cir.1992), a case in which the Fifth Circuit held that the Board was not free simply to ignore strong equities. *See id.* at 497. *Diaz–*

*Resendez,* however, is a horse of a different hue. There, the Board gave no consideration whatever to the petitioner's positive equities. *See id.* at 497–98. Here, in contrast, the Board gave petitioner's positive equities detailed consideration and deemed them insufficient to overcome countervailing factors in the case. In addition, the underlying criminal conviction in *Diaz–Resendez* (possession of marijuana with intent to distribute), while serious, is not readily comparable to the convictions involved in this case.