32 F.3d 561
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Marco Antonio DE OLIVEIRA MOURA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-2393
 United States Court of Appeals,
First Circuit.
 August 16, 1994
 
 John H. Ruginski, Jr. on brief for petitioner.
 Frank W. Hunger, Assistant Attorney General, Lisa Dornell, Acting Assistant Director, Office of Immigration Litigation, and Alice M. King, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, on brief for respondent.
 B.I.A.
 AFFIRMED.
 Before Cyr, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner Marco Moura (Moura) seeks judicial review of a decision by the Board of Immigration Appeals (BIA) that effectively denied Moura discretionary relief from deportation under 8 U.S.C. Sec. 1182(c).[1] We affirm pursuant to Loc. R. 27.1.
 
 I.
 
 2
 Moura is a 26-year old native of Portugal who entered the United States as a lawful permanent resident on June 14, 1980, when he was 12 years old. He returned to Portugal to visit his father on two occasions between 1980 and 1984. Moura last entered the United States on July 5, 1984 and has maintained lawful residence since that date.
 
 
 3
 On October 22, 1987, Moura was convicted in Rhode Island superior court of two counts of breaking and entering a dwelling without the consent of the owner and one count of entering a building with the intent to commit larceny. He received concurrent 36-month sentences on each count. Moura was only required to serve the first 6 months in prison. The remaining terms were suspended and Moura was placed on probation for 30 months.[2]
 
 
 4
 On February 24, 1988 Moura was charged with attempted breaking and entering, conspiracy, and possession of marijuana. All of these offenses were committed on September 18, 1987, i.e., while the charges that resulted in his October 22, 1987 convictions were still pending. Moura was convicted of these additional charges on April 21, 1988.[3] One month later, the Immigration and Naturalization Service (INS) commenced deportation proceedings by filing an order to show cause (OSC) why Moura should not be deported as an alien convicted of two crimes of moral turpitude not arising out of a single scheme of criminal conduct. The OSC was based on two of Moura's October 22, 1987 convictions.
 
 
 5
 On August 1, 1988, a deportation hearing was held at which the INS amended its OSC to charge that Moura was deportable as an alien who had committed a crime of moral turpitude within five years of entry and had received a sentence of at least one year and had also violated the law relating to the illegal possession of marijuana. The charges were based on Moura's October 22, 1987 conviction for breaking and entering with the intent to commit larceny and his April 21, 1988 conviction for possession of marijuana. See 8 U.S.C. Sec. 1251(a)(4), Sec. 1251(a)(11)(1988).[4] Moura, who was represented by counsel, conceded deportability and expressed his intent to file an application for discretionary relief under 8 U.S.C. Sec. 1182(c). The Immigration Judge ordered Moura to file his application by September 1, 1988 and scheduled a waiver hearing for October 5, 1988.
 
 
 6
 On August 9, 1988, eight days after Moura's deportation hearing, Moura was arrested for his second possession of marijuana offense. (R. 247-48). He married one April Akstin, a United States citizen, on August 29, 1988. (R. 278). Shortly thereafter Moura filed his application for discretionary relief from deportation.
 
 
 7
 On October 31, 1988, Moura was arrested for breaking and entering with the intent to commit larceny. (R. 137, 233, 239). He failed to appear at his arraignment and a bench warrant issued for his arrest. (R. 235). Moura was arrested on December 20, 1988 at the Immigration Court in Boston when he appeared for another hearing in his deportation proceedings. The Immigration Judge administratively closed the proceedings, noting that the case could be recalendared after Moura was released. (R. 50-53). On January 9, 1989, Moura was convicted of his second possession of marijuana offense and the October 31, 1988 breaking and entering charge. He was sentenced to 8 years' imprisonment, of which the first 2 and 1/2 years were to be served in prison. The remaining term was suspended and Moura was placed on probation for 5 and 1/2 years. Moura was incarcerated from approximately December 23, 1988 through December, 1990.[5]
 
 
 8
 Shortly after Moura's release from prison, deportation proceedings were reopened.[6] Moura filed an updated application for relief from deportation. Three separate hearings were held between March 1992 and December 28, 1992, at which Moura, his mother, and his girlfriend, testified.[7] On December 28, 1992, the Immigration Judge issued a decision which found that Moura's deportability had been established by clear and convincing evidence (i.e., Moura's concessions) and denied Moura's application for discretionary relief. Moura appealed through his counsel, who specifically indicated in the notice of appeal that she intended to file a brief. On November 5, 1993, the BIA issued a per curiam decision that affirmed the Immigration Judge. Although the BIA noted that Moura's counsel had failed to file a brief, it reviewed the record in its entirety and found that the Immigration Judge had properly weighed all relevant factors in denying Moura's application. In view of this finding and the fact that Moura did not show any meritorious reasons for his appeal, the BIA adopted the Immigration Judge's decision as its own. Moura then filed this timely petition for judicial review.
 
 II.
 
 9
 In determining whether a resident alien merits a waiver of deportation under 8 U.S.C. Sec. 1182(c), immigration officials "must balance the 'social and humane' factors supporting the application against adverse factors favoring deportation." Gouveia v. I.N.S., 980 F.2d 814, 816 (1st Cir. 1992). Factors which may support a waiver include:
 
 
 10
 (1) family ties within the United States;
 
 
 11
 (2) residence of long duration, particularly when begun at an early age;
 
 
 12
 (3) evidence of hardship to family members
 
 
 13
 should deportation occur;
 
 
 14
 (4) military service;
 
 
 15
 (5) a steady employment history;
 
 
 16
 (6) the existence of property or business ties;
 
 
 17
 (7) community service;
 
 
 18
 (8) proof of genuine rehabilitation if the alien has a criminal record;
 
 
 19
 (9) any other evidence tending to show the petitioner's good character.
 
 
 20
 Gouveia, 980 F.2d at 816; Matter of Edwards, Int. Dec. 3134 (BIA 1990); Matter of Marin, 16 I. & N. Dec. 581, 584-85 (BIA 1978). Adverse factors include:
 
 
 21
 (1) the nature and underlying circumstances of
 
 
 22
 the ground(s) for exclusion;
 
 
 23
 (2) the presence of additional significant violations of United States immigration laws;
 
 
 24
 (3) the existence of a criminal record and its
 
 
 25
 nature, recency and seriousness; and
 
 
 26
 (4) any other evidence indicative of the alien's bad character or undesirability as
 
 
 27
 a permanent resident. Matter of Marin, id. at 584. Each case must be judged on its own merits and the alien seeking the discretionary waiver bears the burden of proof. Id.; Hazzard v. I.N.S., 951 F.2d 435, 438 (1st Cir. 1991).
 
 
 28
 The record discloses that Moura has continuously resided in this country for the past 10 years and that his lawful permanent residence status began at a relatively early age (12). His mother and two children are United States citizens, but there was no evidence that Moura's deportation would result in any particular hardship to them. Moura's mother is married and does not rely on her son for economic support. At the time of the deportation hearings Moura was not paying child support for his first son, although he repeatedly indicated that court proceedings might result in a support order. And while Moura resided with his girlfriend and contributed to support her and their child, they were not married at the time of the deportation hearings nor holding themselves out as husband and wife.[8]
 
 
 29
 Moura concedes that his employment history of working for others is sporadic. Between his release from prison in 1990 and the March 3, 1992 deportation hearing, he had not held a steady job. Between 1985 and 1987, prior to his first incarceration, he held brief jobs as a floor boy and laborer, earning a maximum of a few hundred dollars. At his March 3, 1992 deportation hearing, Moura testified that he was working under the table. (R. 158). He later started a painting and roofing business with a friend. By the time of his final hearing he had several contracts for work. He had never filed tax returns. (R. 153, 223). Moura enrolled in an auto body technician training program in March 1992 and expected to graduate in October 1993. (R. 196, 219-220).
 
 
 30
 Against these factors stood Moura's criminal history, which began as a juvenile. As a result of a plea agreement, several juvenile offenses were dropped so that Moura could go to live with his father in Portugal and have his father "straighten ... [him] out." (R. 96-97). Moura began using marijuana when he was fifteen and graduated to cocaine by the time he was seventeen. He developed an addiction and supported his habit by breaking into houses and trading stolen goods for cocaine. R. (155-57). After his first conviction on October 22, 1987, Moura served six months in prison, where he incurred 3 or 4 disciplinary reports for fighting and smoking. (R. 102- 03, 117). He committed the offenses which culminated in his April 21, 1988 conviction while the initial breaking and entering charges were still pending. Moura was arrested for his second possession of marijuana offense and his final breaking and entering charge while he was on probation. During his last incarceration Moura received additional disciplinary reports for fighting and using marijuana. And while Moura has not been arrested for a felony since his last conviction, he was fined for two misdemeanors (disorderly conduct and driving with a suspended license) in April, 1991 and January, 1992. (R. 229-30).
 
 
 31
 The Immigration Judge fully considered all of the aforementioned factors and ruled that, in view of the fact that Moura had been convicted of several serious crimes resulting from an addiction to cocaine, Moura was required to show unusual or outstanding equities in order to merit discretionary relief.[9] He then concluded that Moura had established outstanding equities, but as the adverse factors far outweighed the social and humane considerations, Moura did not deserve a waiver of deportation. The BIA adopted this decision.
 
 
 32
 Moura argues that the decisions of the Immigration Judge and the BIA constitute error and an abuse of discretion. He maintains that the factors which favored granting him discretionary relief clearly outweigh the adverse factors, stressing that all of his felonies were committed during a 3- year period and that he has not been arrested for a felony since 1989.
 
 
 33
 We review waiver decisions only to determine whether the BIA "acted arbitrarily or capriciously, or abused its discretion." White v. I.N.S., 17 F.3d 475, 478 (1st Cir. 1994). We must uphold the BIA unless its decision " 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.' " Id. (citation omitted). Moura does not contend that the BIA's decision departed from established policies or rested on an impermissible basis. He says that the Immigration Judge committed a clear error in concluding that the adverse factors outweighed the favorable ones. We have repeatedly rejected similar arguments. See, e.g., White v. I.N.S., 17 F.3d 475, 478 n. 4 (1st Cir. 1984)(complaints directed to relative weight given favorable and unfavorable factors held without merit); Martinez v. I.N.S., 970 F.2d 973, 975 (1st Cir. 1992)(same). We see no reason to disturb the BIA's decision on this record. Moura has a significant criminal record, marked by repeated thefts and drug use. Neither his employment record nor his family ties appear particularly strong.[10] We thus agree that Moura failed to demonstrate that he merits discretionary relief.
 
 
 34
 Moura also contends that his former counsel rendered him ineffective assistance by failing to file a brief with the BIA. While there is no constitutional right to counsel in deportation proceedings, aliens are entitled to due process. Lozada v. I.N.S., 857 F.2d 10, 13 (1st Cir. 1988). "Ineffective assistance of counsel in a deportation proceeding is a denial of due process only 'if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " Ramirez-Durazo v. I.N.S., 794 F.2d 491, 499-500 (9th Cir. 1986)(citation omitted). "In due process challenges, there must always be a showing of prejudice." Colindres-Aguilar v. I.N.S., 819 F.2d 259, 261 (9th Cir. 1987). See also Mohsseni Behbahani v. I.N.S., 796 F.2d 249, 251 (9th Cir. 1986) (rejecting ineffective assistance claim where no prejudice shown); Figeroa v. U.S. I.N.S., 886 F.2d 76, 78-81 (4th Cir. 1989); Mantell v. U.S. Department of Justice, 798 F.2d 124, 128 (5th Cir. 1986)(same).
 
 
 35
 Where "the BIA [has] considered the merits of the case and fully reviewed the record ... [and][t]here is no indication that anything in a brief could have affected the final result[,]" the failure to file a brief with the BIA does not constitute a violation of due process. Ramirez-Durazo, 794 F.2d at 501. We think that this language applies fully in the present case. The Immigration Judge in his own decision adequately set forth the pertinent circumstances in a decision that is nineteen pages in length and deals extensively with the underlying facts and the reasoning of the Immigration Judge. Given the rather straightforward standards to be applied, a review by the BIA on this record is a straightforward task and there is no reason to think that the failure to restate the facts or argue about them in a brief to the BIA affected the outcome. Accordingly, the petition for review is denied and dismissed and the BIA's order is affirmed.
 
 
 
 [1]
 8 U.S.C. Sec. 1182(c) grants the Attorney General discretion to admit certain aliens who may otherwise be excluded from admission into the United States where the aliens are returning to a lawful unrelinquished domicile of seven consecutive years. The BIA has determined that, "a lawful permanent resident is prima facie eligible for relief from deportation under ... [8 U.S.C. Sec. 1182(c) ], even though he has not proceeded abroad subsequent to the acts which rendered him deportable." Matter of Edwards, Int. Dec. 3134 (BIA 1990). Thus, aliens who maintain lawful permanent residence in the United States for seven consecutive years may seek relief from deportation orders under 8 U.S.C. Sec. 1182(c). Lozada v. I.N.S., 857 F.2d 10, 11 n. 1 (1st Cir. 1988)
 
 
 [2]
 Moura testified that he was first incarcerated from roughly October 1987 to March 1988
 
 
 [3]
 Moura received suspended sentences and probation terms on each of these counts that were to run concurrent with the 36- month sentences that had been previously imposed
 
 
 [4]
 8 U.S.C. Sec. 1251(a)(4) was recodified by the Immigration Act of 1990 as 8 U.S.C. Sec. 1251(a)(2)(A)(i). Similarly, 8 U.S.C. Sec. 1251(a)(11) was recodified as 8 U.S.C. Sec. 1251(a)(2)(B)(i). See Pub.L.No. 101-649 (1990)
 
 
 [5]
 Moura's first son was born while Moura was in prison. The mother divorced Moura on May 30, 1990. (R. 277)
 
 
 [6]
 A deportation hearing was convened on January 9, 1991, which resulted in a continuance. Moura was subsequently directed to file an updated application for a discretionary waiver. He failed to do so and his application was deemed abandoned. Moura was ordered deported on April 19, 1991. His attorney filed a motion to reopen the deportation proceeding, which was allowed on October 16, 1991
 
 
 [7]
 Moura's girlfriend gave birth to his second son on October 30, 1992. (R. 221)
 
 
 [8]
 Moura's girlfriend testified that they expected to marry but had not set a date because they were awaiting the outcome of the deportation hearings. (R. 210-11)
 
 
 [9]
 A showing of unusual or outstanding equities may be required where the alien has been convicted of a succession of criminal acts which establish a pattern of serious criminal misconduct, whether or not those crimes involved controlled substances. However, such a showing does not require the INS to grant a waiver of deportation. See Matter of Edwards, supra
 
 
 [10]
 To be sure, Moura appears to have made a genuine effort to remain self-employed and out of jail since his last incarceration. But Moura's attempt at rehabilitation has been short-lived compared to his criminal history