USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-2309 BING FENG CHEN, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. _________________________ PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ Carlos Magaletta, with whom Magaletta & Associates, P.C. was ________________ ____________________________ on brief, for petitioner. Joseph F. Ciolino, Office of Immigration Litigation, United _________________ States Dep't of Justice, with whom Frank W. Hunger, Assistant ________________ Attorney General, and David M. McConnell, Acting Assistant ____________________ Director, Office of Immigration Litigation, were on brief, for respondent. _________________________ June 20, 1996 _________________________ SELYA, Circuit Judge. Petitioner, Bing Feng Chen, a SELYA, Circuit Judge. ______________ native and citizen of the People's Republic of China, seeks judicial review of an order of the Board of Immigration Appeals (the Board) directing his deportation and, concomitantly, denying his request for a waiver of excludability. Discerning no cognizable error in the administrative proceedings, we leave the Board's order intact. I I Petitioner, then twenty-three years old, entered the United States as a lawful permanent resident in 1984 along with his parents and his brother. The family settled in Boston. In 1987, California authorities charged petitioner with robbery in the second degree and false imprisonment. The record reveals that petitioner and two accomplices undertook to rob a jewelry store. Petitioner brandished a firearm (a fully loaded .38 calibre handgun) during the robbery, holding the store's employees and a half-dozen customers at bay. The value of the property taken exceeded $25,000. Petitioner pled guilty to the charges and the court sentenced him to five years' imprisonment. He served more than half the sentence (including credit for time spent in pretrial detention) before obtaining a parole. On May 27, 1992, the Immigration and Naturalization Service (INS) took steps to deport petitioner because he had (a) committed a crime involving moral turpitude within five years of his lawful entry into the United States, (b) been convicted thereof by a court of competent jurisdiction, and (c) been 2 incarcerated on account of that conviction for a period in excess of one year. See 8 U.S.C. 1251(a)(2)(A)(i). At a subsequent ___ hearing on a show-cause order, an Immigration Judge (IJ) found petitioner subject to deportation and, inter alia, denied his _____ ____ application for a waiver of excludability under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c). Petitioner prosecuted an administrative appeal. In a terse opinion dated November 13, 1995, the Board denied relief. Though conceding deportability, petitioner now seeks judicial review of the denial of the waiver. II II A A In his own words, petitioner's first argument is that the Board deprived him of due process by "fail[ing] to state the standard of review it used in reviewing the decision of the IJ." Whatever constitutional force this standard-of-review argument once may have generated, events have passed it by. The genesis of the argument can be traced to an opinion of the Court of Appeals for the Seventh Circuit, Ortiz-Salas v. ___________ INS, 992 F.2d 105 (7th Cir. 1993), in which Judge Posner, writing ___ for the panel, noted the Board's habitual silence concerning the standard that it used when reviewing a discretionary decision of an IJ (such as a decision to grant or deny a waiver under section 212(c)). See id. at 108. In response to the Board's claim that ___ ___ it had a right to inscrutability and need not advertise its standard of review, Judge Posner wrote: 3 That won't do. It is an undue hardship to require the alien to guess at the standard of review that will be applied to his appeal . . . . [a]nd it is irresponsible for the Board to fail to define its relationship to the immigration judges. Id. at 107. ___ If Ortiz-Salas marked the end of the line, this case ___________ might present difficulties. But the occurrence of an intervening event removes the issue from the case. On September 13, 1994, the Board decided Matter of Burbano, Interim Decision 3229 (BIA __________________ 1994), in which it heeded the message of the Ortiz-Salas court ___________ and made clear that whenever "the Board engages in a review of a discretionary determination by an immigration judge," the Board relies upon its "own independent judgment in deciding the ultimate disposition of the case." Id., slip op. at 2. To ___ eliminate all doubt, the Board added that it "do[es] not employ an abuse of discretion standard when reviewing discretionary determinations of immigration judges." Id. at 3. Burbano thus ___ _______ fills the gap that troubled the Ortiz-Salas court. ___________ The opinion in Burbano antedated the Board's opinion in _______ this case by well over a year. The Board's express invocation of Burbano (via citation to it) in the text of the opinion below _______ makes manifest the untenability of the petitioner's claim under the circumstances now extant. Petitioner, to his credit, acknowledges as much in his reply brief. Consequently, the argument is by the boards. B B Petitioner's next asseveration relates to the adequacy 4 of the Board's findings. It is true, as petitioner points out, that for the most part the Board did not write its own analysis of the positive and negative factors undergirding its determination to deny the requested waiver. It did, however, make clear that it had reviewed the record, the IJ's decision, and petitioner's contentions on appeal, and it concluded that, with one exception,1 the IJ "gave proper consideration to the discretionary factors concerning [petitioner's] request for section 212(c) relief." The Board also indicated its agreement that petitioner had not demonstrated equities sufficient to overbalance the significant adverse factors associated with his involvement in the armed robbery, and it opted to affirm the denial of the waiver "for the reasons specified in [the IJ's] decision." Petitioner complains that the Board's opinion is flawed because it is conclusory in nature. He says in effect that the Board, when exercising independent review, must find the facts afresh, and that it neglected to do so here. We think that petitioner overstates the Board's obligation. As a general proposition, if a reviewing tribunal decides that the facts and evaluative judgments prescinding from them have been adequately confronted and correctly resolved by a  ____________________ 1The Board disclaimed any reliance on hypothetical scenarios set forth by the IJ in his decision. The Board explained that, though it agreed with the IJ that the petitioner's criminal activity, namely, his robbery of a store with a loaded weapon, was "particularly disturbing," nonetheless, "the reprehensible nature of this crime speaks for itself, without any need to speculate as to the feelings of the victims involved." 5 trial judge or hearing officer, then the tribunal is free simply to adopt those findings as long as its opinion or order clearly indicates that it gave individualized attention to the case and, upon reflection, elected to adopt the trier's words rather then to write anew. See Alaelua v. INS, 45 F.3d 1379, 1381 (9th Cir. ___ _______ ___ 1995); Castaneda-Suarez v. INS, 993 F.2d 142, 146 (7th Cir. ________________ ___ 1993); cf. In re San Juan Dupont Plaza Hotel Fire Litig., 989 ___ ________________________________________________ F.2d 36, 38 (1st Cir. 1993) ("Where, as here, a trial court has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquent simply to hear its own words resonate."). These principles hold true in an administrative appeal of this genre. To be sure, the Board is obliged to weigh all the pertinent factors (both favorable and unfavorable), to exhibit due consideration for the universe of weighted factors when tallying the equities, to exercise independent judgment, and to state plainly its reasons for granting or denying relief. See ___ Alaelua, 45 F.3d at 1382; Martinez v. INS, 970 F.2d 973, 974 (1st _______ ________ ___ Cir. 1992). And, moreover, the Board's opinion must reflect that it has carried out these obligations but the Board need not write a long essay merely to prove its mettle. Cf., e.g., ___ ____ Martinez, 970 F.2d at 976 (concluding that the Board need not ________ "address specifically each claim the petitioner made or each piece of evidence the petitioner presented"). To use the vernacular, if the Board's view is that the IJ "got it right," the law does not demand that the Board go through the idle 6 motions of dressing the IJ's findings in its own prose.2 In short, de novo review and what the Board chooses to call "independent review" is neither more nor less than de novo review does not require the Board to reinvent the wheel. On this basis, we join eight of our sister circuits in ruling that the Board need not write at length merely to repeat the IJ's findings of fact and his reasons for denying the requested relief, but, rather, having given individualized consideration to a particular case, may simply state that it affirms the IJ's decision for the reasons set forth in that decision.3 See Prado-Gonzalez v. INS, 75 F.3d 631, 632 (11th ___ ______________ ___ Cir. 1996); Gomez-Mejia v. INS, 56 F.3d 700, 702 (5th Cir. 1995); ___________ ___ Urukov v. INS, 55 F.3d 222, 227-28 (7th Cir. 1995); Alaelua, 45 ______ ___ _______  ____________________ 2In his reply brief, petitioner cites two precedents that he claims repudiate this view. His reliance is mislaid. One case, Perez v. INS, 643 F.2d 640 (9th Cir.) (per curiam), op. am., 665 _____ ___ ___ ___ F.2d 269 (9th Cir. 1981), cert. dismissed, 459 U.S. 983 (1982), _____ _________ was not a case in which the Board adopted the findings of an IJ, but, rather, a case in which the Board, in violation of its own ________________________ regulations, neglected to indicate on the record "the factors it ___________ considered in concluding that [the alien] failed to establish a prima facie case of extreme hardship [under 8 U.S.C.  _____ _____ 1254(a)(1)]," thereby frustrating judicial review. Id. at 641. ___ In the second case, Anderson v. McElroy, 953 F.2d 803 (2d Cir. ________ _______ 1992), the Court found an abuse of discretion in the Board's summary refusal to stay deportation pending the disposition of an alien's motion to reopen, notwithstanding the INS' acknowledgment of a significant change in circumstances and its request that the Board vacate the deportation decision and remand for further proceedings. See id. at 805-06. Neither case has any bearing on ___ ___ the issue at hand. 3Where, as here, the Board adopts the findings and conclusions of the IJ, the IJ's rescript serves de facto as the Board's articulation of its ratio decidendi. For that reason, we _____ _________ henceforth refer to the findings and conclusions of the IJ, adopted by the Board, as if the Board had authored them in the first instance. 7 F.3d at 1382-83; Maashio v. INS, 45 F.3d 1235, 1238 (8th Cir. _______ ___ 1995); Gandarillas-Zambrana v. BIA, 44 F.3d 1251, 1255 (4th ____________________ ___ Cir.), cert. denied, 116 S. Ct. 49 (1995); Panrit v. INS, 19 F.3d _____ ______ ______ ___ 544, 546 (10th Cir. 1994); Arango-Aradondo v. INS, 13 F.3d 610, _______________ ___ 613 (2d Cir. 1994); see also De Leon v. INS, 547 F.2d 142, 149 ___ ____ _______ ___ (1st Cir. 1976) (applying this principle sub silentio), cert. ___ ________ _____ denied, 434 U.S. 841 (1977). ______ Here, the Board's individualized attention to the case is apparent. See, e.g., supra note 1. We hold, therefore, that ___ ____ _____ the Board acted within its proper purview when it adjudicated petitioner's case and resolved the appeal by adopting the IJ's findings and conclusions. C C As our journey winds down, we reach the bedrock issue: the supportability of the Board's denial of section 212(c) relief. The fact that the Board's findings and conclusions are adopted rather than original does not affect our standard of review. As in any other section 212(c) case, we need determine only whether the decision is arbitrary, capricious, or an abuse of discretion. See generally Gouveia v. INS, 980 F.2d 814, 817 ___ _________ _______ ___ (1st Cir. 1992) (elucidating standard of review).  Waivers of deportation are not profligately to be granted. In deciding whether to exercise its discretionary authority, the Board "must balance the `social and humane' factors supporting the application against adverse factors favoring deportation." Id. at 816. When the ground for ___ 8 deportability is the alien's commission of a serious crime, a high hurdle blocks the path to section 212(c) relief. In such circumstances "it is incumbent upon a petitioner not only to demonstrate that favorable factors preponderate but also to present `unusual or outstanding equities'" in order to justify a waiver. Id.; accord Martinez, 970 F.2d at 976; Hazzard v. INS, ___ ______ ________ _______ ___ 951 F.2d 435, 438 (1st Cir. 1991). The armed robbery of which petitioner stands convicted indubitably qualifies as a serious crime within this rubric. In this instance, the Board examined all the relevant factors, applied the appropriate standard, decided that petitioner's proffer lacked persuasive force, and concluded that petitioner had failed to make out a sufficiently convincing case for an affirmative exercise of discretion. On this record, we have no warrant to second-guess the Board's conclusion. See ___ Martinez, 970 F.2d at 974 (explaining that rejection of a section ________ 212(c) waiver request will be upheld "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis") (citation omitted). Of course, the credit side of the ledger is not empty. Petitioner had a decade of lawful permanent residence, family ties in this country, part-ownership in a house, some involvement with community service, and a chiaroscuro record of gainful employment. At bottom, however, these are garden-variety equities; they simply do not rise to a level that would warrant 9 the appellation "unusual" or "outstanding." See, e.g., Henry v. ___ ____ _____ INS, 74 F.3d 1, 7 (1st Cir. 1996) (finding no unusual or ___ outstanding equities on comparable showing in adjustment-of- status case). Petitioner also made a modest showing of hardship to family members should he be deported, but the hardships he envisions are not severe. Petitioner's relatives in this county are in good health and not dependent upon him for support. His plans to start a business with his brother are embryonic. Finally, we attach little weight to the hardships that petitioner personally may experience upon his repatriation to China because they are of the sort that would be common to almost any alien returning to a less prosperous land after living in the United States. See Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir. ___ ______________ ___ 1986). The short of it is that, as the Board determined after mulling all the relevant factors, petitioner's equities (including his litany of potential hardships) do not outweigh the serious adverse factors that are present in his case.4 Because the record reflects a plausible basis for the Board's determination, we are constrained to find that the Board acted well within its broad discretionary powers in refusing to grant the waiver. See Gouveia, 980 F.2d at 818; Hazzard, 951 F.2d at ___ _______ _______  ____________________ 4The armed robbery itself stands as the most serious adverse factor. In addition, the Board supportably found that petitioner showed no remorse for his actions and that he had made no real progress toward rehabilitation. 10 438. As we recently wrote in an analogous case, "[t]his was a judgment call, pure and simple," and, consequently, a reviewing court must defer to the Board's notion of where to strike the proper balance. Gouveia, 980 F.2d at 819; see also Henry, 74 _______ ___ ____ _____ F.3d at 7 (counselling that, in such purlieus, "[a] reviewing court may not reweigh the equities afresh"). III III We need go no further.5 Waiver of deportation is a discretionary remedy. In the absence of either a mistake of law or a palpable abuse of discretion neither of which sully the pages of this record the Board's judgment must prevail. The petition for review is denied and dismissed. The petition for review is denied and dismissed. _______________________________________________  ____________________ 5Petitioner's argument that the Board applied a per se rule in effect holding that the crime was so heinous that no combination of positive factors could have outweighed it is belied by the record and does not require further comment. 11