UNITED STATES of America,
Plaintiff,

v.

Santos INTERIAN–MATA, Defendant.

No. 03 CR 0048 BTM.

United States District Court,
S.D. California.

April 1, 2005.

---

Carol C. Lam, United States Attorney, and Mark R. Rehe, Assistant United States Attorney, United States Attorney's Office, Southern District of California, San Diego, CA, for the Plaintiff United States of America.

Gerald B. Singleton, Esq., San Diego, CA, for the Defendant Santos Interian–Mata.

## ORDER DENYING MOTION TO DISMISS ON REMAND

MOSKOWITZ, District Judge.

On December 13, 2004, the Ninth Circuit remanded the case to this Court to determine whether Defendant Interian–Mata was prejudiced by the Immigration Judge's failure to inform him of his eligibility for § 212(c) relief. The Defendant has renewed his motion to dismiss the indictment. Defendant also moves to dismiss the indictment on the ground that he was prejudiced by the Immigration Judge's failure to inform him that he could challenge the retroactive application of § 321 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The parties have submitted renewed briefing on the issue of prejudice and the Court has held oral argument in this matter. For the reasons expressed below, the Court finds that Defendant did not suffer prejudice and therefore it is the holding of this Court that the judgment and sentence shall remain in force.

## I. BACKGROUND

In 1995, Defendant, a legal permanent resident of the United States, pled guilty to forcible rape and was sentenced to three years imprisonment. Under the law in effect in 1995, Defendant could be deported if he had committed an "aggravated felony." However, at the time, his conviction was not categorized as an "aggravated felony" and was therefore not a deportable offense. One year later, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). IIRIRA § 321 retroactively expanded the definition of aggravated felony to cover rape (among other offenses). *See also* 8 U.S.C. § 1101(a)(43)(A). IIRIRA § 304 repealed the discretionary relief previously available under INA § 212(c).

In August 1999, the Immigration and Naturalization Service ("INS") informed Defendant that his 1995 conviction rendered him deportable. Defendant indicated his intention to appeal the ruling, but was deported to Mexico before the deadline to appeal. Over the next three years, Defendant was twice apprehended at an immigration checkpoint in the United States. Each time, the government reinstated Defendant's prior removal order and removed him to Mexico.

On December 10, 2002, Defendant was again stopped in California near the Mexican border. He was taken into custody and charged with violating 8 U.S.C. § 1326. Defendant moved this Court to dismiss the indictment on the grounds that his due process rights were violated because IIRIRA § 321 is unlawfully retroactive and because the Immigration Judge ("IJ") failed to inform him of possible relief under § 212(c) at his removal hearings. On June 2, 2003, this Court denied Defendant's motion to dismiss. On June 19, 2003, Defendant pled guilty to the § 1326 violation reserving the right to appeal the Court's denial of his motion to dismiss. On October 10, 2003, the Court sentenced Defendant to 57 months in prison and three years supervised release.

Defendant's appeal to the Ninth Circuit was argued and submitted on October 8, 2004. On December 13, 2004, the Ninth Circuit held that the application of IIRIRA § 321 to Defendant's forcible rape conviction does not violate due process because § 321 is not unlawfully retroactive. *See United States v. Interian–Mata*, 118 Fed. Appx. 223, 224–225 (9th Cir.2004) (unpublished). However, relying on *United States v. Leon–Paz*, 340 F.3d 1003 (9th Cir.2003), the Ninth Circuit held that Defendant was eligible for § 212(c) relief notwithstanding the fact that his conviction did not become an "aggravated felony" until after his guilty plea. *Id.* Accordingly, the Ninth Circuit remanded the case to this Court to determine whether Defendant was prejudiced by the IJ's failure to inform him of possible relief under § 212(c) at his 1999 deportation hearing. *Id.*

## II. DISCUSSION

■ Because Defendant moves to dismiss the indictment under 8 U.S.C. § 1326 based on a due process violation in the underlying deportation proceeding, he must show prejudice resulting from the violation. *United States v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir.2001). Defendant bears the burden of showing he was prejudiced. *United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir.1994) (citation omitted); *United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1056 (9th Cir.2003). In order to establish prejudice, Defendant "does not have to demonstrate that he would have received relief, only that he has plausible grounds for relief under 212(c)." *Gonzalez–Valerio*, 342 F.3d at 1054 (citations omitted). *See also United States v. Corrales–Beltran*, 192 F.3d 1311, 1318 (9th Cir.1999) ("To show that he was prejudiced, [defendant] must offer plausible grounds of relief which might have been available to him but for the deprivation of rights.") (internal quotation marks omitted).[1]

### A. HEIGHTENED STANDARD: UNUSUAL OR OUTSTANDING EQUITIES

■ It is well settled that "an applicant for § 212(c) relief who has a serious criminal history must demonstrate *unusual or outstanding equities* in order to receive relief." *Gonzalez–Valerio*, 342 F.3d at 1056–57 (emphasis added); *see also Ayala–Chavez v. INS*, 944 F.2d 638, 641 (9th Cir.1991) ("Outstanding equities must also be demonstrated where the applicant's record reflects a pattern of serious criminal activity."); *Matter of Edwards*, 20 I & N Dec. 191, 196, 1990 WL 385757 (BIA 1990);

---

**1.** "Once Gonzalez makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *Gonzalez–Valerio*, 342 F.3d at 1054 (citing *United States v. Gonzalez–Mendoza*, 985 F.2d 1014, 1017 (9th Cir.1993)).

*Matter of Buscemi*, 19 I & N Dec. 628, 633–34, 1988 WL 235453 (BIA 1988).

In this case, Defendant has a very serious criminal history including three separate drunk driving convictions, multiple probation revocations, and a felony conviction for forcible rape. Defendant's criminal record spans 12 years up to the 1999 removal hearing where the IJ failed to inform him of possible § 212(c) relief. The 1995 forcible rape conviction alone is sufficiently egregious to warrant the heightened standard. *See Matter of Buscemi*, 19 I & N Dec. at 633–34 ("[S]uch a [heightened] showing may be mandated because of a single serious crime . . . or because of a succession of criminal acts, which together establish a pattern of serious criminal misconduct."); *Yepes–Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir.1993) ("Where a 212(c) petitioner has committed a particularly grave criminal offense, he must make a heightened showing that his case presents unusual or outstanding equities to warrant discretionary relief.").[2] In any case, the Court finds Defendant's 12–year criminal record as a whole reflects a serious pattern of criminal conduct. *See id.; Matter of Edwards*, 20 I & N Dec. at 196 ("The respondent's overall 10–year pattern of criminal conduct, as well as his controlled substance distribution offenses, each independently require that he demonstrate unusual or outstanding equities if he is to have the possibility of receiving a favorable exercise of discretion."). Accordingly, Defendant is required to demonstrate unusual or outstanding equities. *See Gonzalez–Valerio*, 342 F.3d at 1057 ("Because Gonzalez was convicted of multiple crimes, including lewd acts on a child, spousal abuse, and resisting arrest, he would be required to demonstrate outstanding equities."). In other words, to show prejudice here, Defendant must demonstrate a *plausible* case for § 212(c) relief under the heightened standard. *See id.*

### B. BALANCING EQUITIES

Section 212(c) does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. *Matter of Edwards*, 20 I & N Dec. at 194–95 ("[T]he Attorney General or his delegate is required to determine as a matter of discretion whether an alien merits the relief sought, and the alien bears the burden of demonstrating that his application warrants favorable consideration.") (citing *Matter of Marin*, 16 I & N Dec. 581, 582–83 (BIA 1978)). The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved. *Id.* at 195. There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident. *Id.*

---

**2.** *Accord Rashtabadi v. INS*, 23 F.3d 1562, 1570 n. 2 (9th Cir.1994) ("The unusual or outstanding equities test is often applied to aliens who have violated controlled substance laws, but it is by no means limited to drug offenders. The test may be applied to any alien who has committed a sufficiently serious offense."); *Gouveia v. INS*, 980 F.2d 814, 817 (1st Cir.1992) ("The need to demonstrate unusual or outstanding equities is not triggered exclusively by the commission of crimes involving drugs. The requirement applies with full force to other types of serious crimes [i.e. rape] . . . . Gravity, not narcotics, pulls the trigger and brings the higher 'unusual or outstanding equities' standard into play.") (citing *Matter of Buscemi*, 19 I & N Dec. at 633); *Varela–Blanco v. INS*, 18 F.3d 584, 586 (8th Cir.1994) (applying the heightened standard where "alien had prior conviction for lascivious acts with a child."); *Matter of Buscemi*, 19 I & N Dec. at 633 ("The necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, however. Rather . . . one must examine the gravity of the offense, per se.").

Favorable considerations include: (1) family ties within the United States; (2) residence of long duration in this country (particularly when the inception of residence occurred at a young age); (3) evidence of hardship to the respondent and his family if deportation occurs; (4) service in this country's armed forces; (5) a history of employment; (6) the existence of property or business ties; (7) evidence of value and service to the community; (8) proof of genuine rehabilitation if a criminal record exists; and (9) other evidence attesting to a respondent's good character. *Id.*

The factors deemed adverse to an alien are: (1) the nature and underlying circumstances of the exclusion or deportation ground at issue; (2) the presence of additional significant violations of this country's immigration laws; (3) the existence of a criminal record and, if so, its nature, recency, and seriousness; and (4) the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. *Id.* One or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. *Id.*[3]

■ Balancing the equities in this case, the Court finds that Defendant cannot demonstrate plausible grounds for § 212(c) relief under the heightened standard. Indeed, no "unusual or outstanding equities" are present in this case that merit plausible § 212(c) relief. Defendant's favorable factors simply pale in comparison to the substantial negative factors—effectively ruling out any plausible relief under § 212(c).

### 1. FAVORABLE FACTORS

In favor of his case, Defendant submits that his positive equities include a long residence in the United States, close family ties in the United States, hardship to his family if he were deported, a steady work history and evidence of genuine rehabilitation. Upon close examination, the Court finds these factors unavailing. While Defendant lived in the United States for 21 years prior to his underlying 1999 deportation, the Court notes that his residency here has been fraught with continual criminal convictions starting in 1987.

Defendant's family ties consist of his mother, five siblings and eight nieces and nephews who all live in the United States. Notably, Defendant is not married and has no children in the United States. In any case, "[a]lthough strong family ties can serve as a favorable factor in determining whether to grant § 212(c) relief ... courts have upheld the BIA's rejection of much stronger claims." *Gonzalez–Valerio,* 342 F.3d at 1057 (citations omitted). *See, e.g., Ayala–Chavez,* 944 F.2d at 642 (upholding, on abuse of discretion review, the BIA's finding that the deportee had not demonstrated outstanding equities where the deportee demonstrated 18 years of residence, most of his family resided near him, many of them testified on his behalf, and he had a minor daughter whom he supported); *Zaluski v. INS,* 37 F.3d 72 (2d Cir.1994) (per curiam) (30–year resident alien, who lived in United States since age one, and whose entire family resides in United States); *Douglas v. INS,* 28 F.3d 241, 243–44 (2d Cir.1994) (19–year resident alien with two U.S. citizen children).

Defendant also stresses the hardship to his family if he were deported. Defendant contends that he supported his mother

---

**3.** Furthermore, "as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which ... involve unusual or outstanding equities." *Matter of Edwards,* 20 I & N Dec. at 195.

financially and thus she would suffer if he was deported. In support, Defendant has submitted declarations from his mother and sister. Defendant's mother, Aurella Mata, states that she is unable to work and relied on Defendant as her primary means of financial support. (Aurelia Mata Decl. ¶ 7.) However, she goes on to state that while Defendant was incarcerated for forcible rape, she relied on her other children living in the United States for financial support. Thus, Defendant's mother, by her own account, is not solely dependent on Defendant for financial or emotional support. *See Alaelua v. INS*, 45 F.3d 1379, 1381 (9th Cir.1995) (discounting the alleged financial hardship to respondent's parents because "many of his siblings reside in the United States and should be able to provide adequate support for the respondent's parents"); *Matter of Buscemi*, 19 I & N Dec. at 635 (discounting the alleged financial hardship to the respondent's family because "his family have managed to support themselves while the respondent has been in prison").

Defendant next states that he had a long and steady work history in the United States. Specifically, Defendant points to the declarations of his mother and sister which state that Defendant has always had at least one job, if not two. The record, however, does not support this assertion. The Social Security Administration ("SSA") has no record of Defendant's employment for 1991 and 1992. Insofar as Defendant's mother and sister have "never know him to be without at least one job[,]" the SSA also has no record of employment for 2001 and 2002. Thus, the Court finds their assertions to lack credibility. Furthermore, Defendant himself admitted that he was unemployed at the time of his arrest in the present matter. The pre-

sentence report also reveals that Defendant's work history consisted mainly of short term jobs each lasting no longer than two to five months.[4] Thus, Defendant's work history in this country has been irregular and anything but steady. *See Matter of Roberts*, 20 I & N Dec. 294, 302, 1991 WL 353515 (BIA 1991) ("We do not consider the respondent's employment history to be an unusual or outstanding equity. The irregularity of his employment between 1987 and 1989 certainly impairs the significance of this factor.").

Lastly, Defendant purports to argue that he has been rehabilitated. Again, Defendant relies on the declarations of his mother and sister. Each state, in verbatim language, that since Defendant's "release from custody in 1999, he has not been in any additional trouble" and has "show[n] genuine rehabilitation." (Aurelia Mata Decl. ¶ 8; Elva Gonzalez Decl. ¶ 8.) These statements, however, are beyond the scope of review in that they only address Defendant's alleged conduct *after* the 1999 deportation hearing. In any case, the Court finds these statements unreliable in the face of Defendant's continuing criminal record. On May 5, 2000, Defendant's parole was revoked and he was returned to custody for presenting false identification to a peace officer. On December 19, 2002, Defendant was charged with his *fourth* drunk driving offense (as well as being an unlicensed driver without evidence of financial responsibility). Thus, Defendant's criminal record belies any claim of rehabilitation after the 1999 deportation hearing.

More importantly, Defendant's criminal record shows no rehabilitation prior to the 1999 hearing. *See Matter of Edwards*, 20 I & N Dec. at 198 ("rehabilitation ... [is] a

---

**4.** Defendant, in his pre-sentence interview, reported that his prior employment consisted of being a kitchen assistant in a hospital, a la-

borer in a mattress factory and then in a printing company. (Pre–Sentence Report at 10.)

significant factor" for 212(c) relief). During the 12 year span preceding the hearing, Defendant Incurred three separate drunk driving convictions, three separate convictions for driving on a suspended license, a forcible rape conviction, and two probation revocations. Defendant has shown no remorse. During the 1999 hearing he actually denied committing forcible rape (which he pled guilty to and served three years). *See Matter of Jose Mendez–Moralez,* 21 I & N Dec. 296, 304–05, 1996 WL 227774 (BIA 1996) ("Taking responsibility and showing remorse for one's criminal behavior does constitute some evidence of rehabilitation ... [b]ut the fact remains that in the case before us, there is no evidence of remorse or of acknowledgement [sic] of guilt.") (citations omitted); *Gonzalez v. INS,* 996 F.2d 804, 812 (6th Cir.1993) (upholding the BIA's decision that respondent's denial of guilt demonstrated a lack of rehabilitation even though her criminal history was limited to a single drug conviction and she had been a model prisoner). The record clearly shows Defendant's lack of rehabilitation and "the community will suffer the consequences of any future criminal behavior on his part." *Matter of Edwards,* 20 I & N Dec. at 198.

In examining all the possible favorable factors, the Court notes that Defendant has no record of service in this country's armed forces and has not demonstrated the existence of any property or business ties here. *See Matter of Edwards,* 20 I & N Dec. at 195. Additionally, Defendant has not proffered any evidence of his value and service to the community or any other evidence attesting to his good character. *Id.* In the face of Defendant's three drunk driving convictions and his forcible rape conviction, the Court finds such a showing implausible.

## 2. ADVERSE FACTORS

Turning to the adverse factors against Defendant, the nature and underlying circumstances of Defendant's 1999 deportation are very serious. Defendant pled guilty to forcible rape. *See Elramly v. INS,* 73 F.3d 220, 223 (9th Cir.1995), *vacated on other grounds,* 518 U.S. 1051, 117 S.Ct. 31, 135 L.Ed.2d 1123 (1996) ("As the offense becomes more serious, more counterbalancing equities are required before the BIA will grant relief.") (citation omitted). Furthermore, the facts of Defendant's forcible rape conviction are particularly disturbing. The victim, at the time, was a 21 year old mentally disabled woman and Defendant was a long time friend of the victim's family.

Defendant's criminal record leading up to the forcible rape conviction is also egregious. Defendant had *three* separate drunk driving convictions, the last one occurring only 5 months after the second conviction while Defendant was still on probation. Defendant has shown no evidence of or effort towards rehabilitation. Indeed, Defendant's criminal record demonstrates a patent lack of rehabilitation and a tendency toward recidivism. Viewing the evidence as a whole up to the 1999 hearing, no reasonable Immigration Judge could have granted Defendant § 212(c) relief. The overwhelming adverse factors in this case balanced against Defendant's diminished favorable factors negate any plausible grounds for § 212(c) relief. *See Matter of Arreguin,* 21 I. & N. Dec. 38, 42, 1995 WL 314389 (BIA 1995) (under the heightened unusual or outstanding equities standard, the defendant "faces a difficult task in establishing that [he or] she merits discretionary relief"); *Elramly,* 73 F.3d at 223. Simply put, Defendant has failed to show any plausible grounds for § 212(c) relief under the heightened "unusual or outstanding equities" standard. Accordingly, the Court finds no prejudice to Defendant.

Most recently, the Defendant offered the declaration of an expert immigration

attorney, Jan Bejar, which establishes that even persons convicted of sexual offenses could obtain § 212(c) relief. (*See* Jan Bejar's Decl. ¶ 5.) Specifically, Mr. Bejar states that "while a forcible rape conviction would be a serious negative factor, it would not necessarily preclude an alien from receiving relief from deportation." (*Id.* ¶ 6) (emphasis omitted).[5] The Court does not disagree. Defendant's forcible rape conviction alone does not foreclose the plausibility of § 212(c) relief in this case. Rather, it is Defendant's entire record and the particular facts of his forcible rape conviction when balanced against his minimal equities that convince the Court that Defendant has no plausible grounds for § 212(c) relief.[6] Thus, the IJ's failure to advise Defendant of possible § 212(c) relief was harmless.

### C. *Retroactive Application of IIRIRA § 321*

Defendant also argues that he was prejudiced by the IJ's failure to advise him that he could challenge the retroactive application of IIRIRA § 321. This argument, however, is foreclosed by the Ninth Circuit's decision in this case. On appeal, the Ninth Circuit explicitly held that the retroactive application of § 321 to Defendant's forcible rape conviction does not violate due process because § 321 itself is not unlawfully retroactive. *See Interian–Mata,* 118 Fed.Appx. 223, 224 (9th Cir. 2004) (unpublished) ("Section 321 of IIRIRA is not unlawfully retroactive.... Accordingly, the application of IIRIRA § 321 to Interian's forcible rape conviction does

not violate due process.") (citations omitted). Thus, Defendant suffered no prejudice as a result of the IJ's failure to advise him of an unavailing argument. Indeed, the Ninth Circuit recognized this because they did not remand this case on the issue of prejudice concerning the retroactive application of § 321. *See id.*

### III. *Conclusion and Order*

The Immigration Judge's failure to advise Defendant of § 212(c) relief was harmless and Defendant was not prejudiced. The motion to dismiss on remand is **DENIED.** The judgment and sentence previously imposed by this Court shall therefore remain in force. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

5. To this effect, Defendant has also submitted the declaration of Robert Swain, an immigration attorney, who states that "it would be reversible error for an immigration judge to categorically deny an application for 212(c) relief because of the category of an alien's prior conviction." (Robert Swain's Decl. ¶ 6.)

6. (*Accord* Jan Bejar's Decl. ¶ 6) (the IJ must "balance the negative facts (including the nature and recency of the offense) against the positive equities and make a determination based on the totality of the circumstances") (parenthetical in original); (Robert Swain's Decl. ¶ 5.)