Veronica **CRADDOCK**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 92–3613.

United States Court of Appeals,
Sixth Circuit.

Argued March 9, 1993.

Decided July 12, 1993.

Douglas S. Weigle (argued and briefed), Bartlett, Junewick & Weigle, Cincinnati, OH, for petitioner.

Nicholas J. Pantel, Asst. U.S. Atty., Office of the U.S. Atty., Cincinnati, OH, Robert Kendall, Jr., Richard M. Evans (briefed), Emily A. Radford (argued), Ellen Sue Shapiro, U.S. Dept. of Justice, Immigration Litigation, Civ. Div., Washington, DC, and Barbara L. Beran, Office of the U.S. Atty., Columbus, OH, for respondent.

Before: JONES and GUY, Circuit Judges; and COHN, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Petitioner, Veronica Craddock, appeals the decision of the Board of Immigration Appeals (BIA) which denied her request for a waiver from deportation.

Upon a review of the record, we conclude the BIA did not abuse its discretion, and we affirm.

## I.

Petitioner is a resident alien who, on February 25, 1991, was convicted of conspiracy to manufacture more than 100 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea bargain, she was sentenced to 60 months' incarceration to be followed by five years of supervised release. As a result of this conviction, the Immigration and Naturalization Service (INS) issued petitioner an order to show cause why she should not be deported.

At the deportation hearing, petitioner admitted deportability, but sought a waiver under section 212(c) of the Immigration and Nationality Act (Act or INA). 8 U.S.C. § 1182(c). Since Craddock was convicted of a serious drug offense, it was necessary that she show unusual or outstanding equities even to be considered for waiver. *Matter of Buscemi,* 19 I. & N. Dec. 628 (BIA 1988). Pursuant to this requirement, the BIA credited petitioner with the following:

In the respondent's favor we consider her more than 30 years in the United States. The record reflects that the respondent arrived here when she was only 3-years old. The respondent's mother is a lawful permanent resident of the United States and her sister and brother are both United States citizens. The respondent testified that she has no close family members in Mexico. The respondent is also married to a United States citizen, but the record reflects that he is currently confined under a 15-years prison sentence for his involvement in the manufacture of methamphetamines.

We also consider that she was raised by her family in the United States and her father had alcohol-abuse problem. The record reflects that her father died when she was 14-years old, partly as a result of his alcohol abuse. The respondent attended school in the United States, receiving some recognition in 1969, 1970–71. It also appears that although the respondent initially dropped out of high school, she completed her high school equivalency after her conspiracy conviction. The record also reflects that she participated in a court-ordered vocational guidance service. After she left high school, the respondent moved in with the father of her daughter. The respondent's mother in her affidavit, indicates that the respondent held various part-time jobs after she left school and finally obtained full-time employment with a bank in September 1984 until sometime in 1985. The record also reflects that the

---

* Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

respondent may have employment after the completion of her incarceration.

(Exhibit and Transcript references omitted).

█ Based upon the foregoing, the BIA concluded that petitioner had shown outstanding equities. However, it is the obligation of the BIA to weigh the equities against the adverse factors shown by the record. *Matter of Edwards,* Interim Dec. 3134 (BIA 1990).

As to adverse factors, the BIA found as follows:

Turning now to the adverse factors of record, we first look to the respondent's three convictions. In 1977, the respondent was first convicted of the unlawful possession of a controlled substance, Tunial, a derivative of barbituric acid. The record reflects that the respondent received 60 days' confinement and was fined $250 for this offense. Even after the birth of her daughter in 1981, the respondent continued to use drugs and was convicted a second time in 1985. The respondent was convicted of possession of methamphetamine weighing less than 28 grams and was sentenced to 3 years' confinement and fined $500. Her sentence was suspended and she was placed on probation for 3 years. Her third conviction occurred on February 21, 1991, for conspiracy to manufacture more than 100 grams of methamphetamine. The respondent was sentenced to 60 months' confinement for this last conviction.

In all, the respondent has been using illegal drugs since she was 15-years old. The respondent, while living with the father of her daughter, continued to use drugs even after her birth, without careful consideration to her daughter's well-being. The respondent, her daughter, and her daughter's father then moved in with her mother until the daughter's father had to return to prison. As the respondent testified, she then "took off" from her mother's, leaving her daughter there for her mother to care. The respondent testified that she lived on the street for several years up until her second conviction. Once again, the respondent's mother interceded and found her employment after her conviction.

Even after the respondent met her husband and after his release from prison, she would still rely on her mother to care for her daughter, leaving her with her mother on weekends. After the respondent's drug use intensified and she started using heroin, the respondent left her daughter a second time with her mother.

... Her drug use for more than 16 years, approximately half the amount of time the respondent has remained in the United States, is a very serious negative factor that is exacerbated by the respondent's reliance on her mother to care for her daughter (and later her son) whenever she needed to [ ] continue her habits.

(Exhibit and Transcript references omitted).

When deportation proceedings are triggered by a felony conviction, it is also incumbent upon the BIA to consider the matter of a petitioner's rehabilitation. On this issue, the BIA concluded:

While it is clear that the respondent's family has supported her throughout her troubled involvement with drugs, the respondent's most recent actions do not show rehabilitation. After her first conviction in 1977, the respondent continued to use drugs. After her marriage in 1986, the record reflects that her husband began to manufacture methamphetamines to support his heroin habit. In 1989, the respondent rather than leave her husband, left her daughter with her mother for a second time and began using heroin herself. The respondent testified that she tried a methadone treatment program prior to her arrest but did not like it. Given her prior history of drug use, her demonstrated past lack of responsibility toward the care of her children, and her long period of incarceration with court-ordered participation in vocational guidance, we find that the respondent has not shown her rehabilitation.

(Exhibit and Transcript References omitted).

## II.

█ We review the denial of a waiver from deportation under an abuse of discretion standard. *Vergara–Molina v. INS,* 956 F.2d 682, 684 (7th Cir.1992). As we stated in

*Balani v. INS,* 669 F.2d 1157, 1161 (6th Cir.1982), the decision of the BIA will be upheld unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group."

■ When the BIA decides whether to award discretionary relief, it applies a balancing test. *Matter of Marin,* 16 I. & N. Dec. 581 (BIA 1990). The BIA test weighs the "alien's undesirability as a permanent resident [against] the social and humane considerations presented in [her] behalf." *Id.* at 584. The BIA, exercising by delegation the powers of the Attorney General, essentially is dispensing mercy if a waiver is granted. However, since Congress has left the Attorney General unfettered with regard to a section 212(c) waiver and has set no criteria, this leaves the judiciary a very narrow scope of review.

Once we have determined that the BIA has considered all of the favorable factors advanced by the petitioner and has engaged in balancing them against the adverse factors, the fact that we would have resolved the balancing differently is of no moment. As the Supreme Court has stated: "In this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review." *INS v. Rios–Pineda,* 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985).

■ Here, the BIA properly concluded that Craddock needed to demonstrate outstanding and unusual equities in order to secure relief. While finding that petitioner had established such equities, the BIA concluded nevertheless that her equities did not outweigh the adverse factors, and therefore it was not in the best interest of this country to grant relief. The BIA's decision was rational and did not depart from established policies or rest on an impermissible basis.

In upholding the Board, we recognize the severe hardship that will result from a mother, either with or without her young children, being returned to a country in which she has not lived since she was a very young child.

Counterbalanced against this, however, are her three drug convictions; her extensive narcotics addiction; her own neglect of her children; and the fact that, since she was 15 years old, she had made bad choices as to her companions and contributed little or nothing to society. The only way we could reverse the BIA under these circumstances is simply to usurp its function and substitute our judgment for that of the Board. This we cannot do.

**AFFIRMED.**

NATHANIEL R. JONES, Circuit Judge, concurring.

The decision reached by the Board of Immigration Appeals ("BIA" or "Board") in this case troubles me because it conflicts with my conception of fairness. Simply put, I am troubled by the determination of the Board which permits the deportation of Veronica Craddock, a person who has been a resident of this country for thirty of the thirty-three years she has been alive. Her formative years as well as her adult years have been spent in this country. Admittedly, her time spent committing crimes was spent in this country; however, so was her time spent as an abused child and a drug-addicted adult. In short, for all relevant purposes, save one—her legal citizenship—the record indicates that the United States is "her" country. Furthermore, I am troubled by a result which would allow the deportation of Craddock, a person who has young children who are American citizens. This deportation will cause severe hardship to Craddock's extended family residing in the United States, and most importantly, to the children. I do not suggest that those favorable equities should automatically cancel out Craddock's negative equities, including her past criminal activity. Indeed, I recognize that Congress has established laws which make deportation based on such negative equities legal and I acknowledge that the Board has followed those laws in good faith. However, merely because the deportation is legal does not necessarily make it equitable. As a result, under my notion of fairness, I find it somewhat unforgiving and unfair to hold that Craddock's criminal activity should overshadow the tre-

mendous hardship and damage that will be done to Craddock and her children and family by deporting her.

Notwithstanding my interpretation of fairness, I agree that, as Judge Guy has indicated, "[t]he only way we could reverse the BIA under these circumstances is simply to usurp its function and substitute our judgment for that of the Board. This we cannot do." *Craddock v. INS*, 997 F.2d 1176, 1179 (6th Cir.1993). Therefore, I concur in the judgment of the court.