Jamal Ahmad HAZIME, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93-3045.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1993.

Decided Feb. 18, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 4, 1994.

Fakhri W. Yono (briefed), Adolph F. Angelilli (argued), Yono & Sarafa, Farmington Hills, MI, for petitioner.

Kristin A. Cabral, Karen Fletcher Torstenson (argued & briefed), U.S. Dept. of Justice, Immigration Litigation, Civil Div., Washington, DC, for respondent.

Before: KEITH and JONES, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The petitioner, Jamal Ahmad Hazime, a permanent resident alien, was convicted of a drug charge some eight years after his arrival in the United States. He conceded that he was subject to deportation, but sought relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (the Act). Section 212(c) vests the Attorney General of the United States, or her delegate, with the discretion to waive deportation for aliens, otherwise deportable, who have maintained "a lawful unrelinquished domicile of seven consecutive years."

Following a hearing an immigration judge granted the section 212(c) waiver, but on appeal by the Immigration and Naturalization Service (the Service), the Board of Immigration Appeals (the BIA or the Board) reversed the immigration judge's decision and ordered Hazime deported. Hazime filed a petition to review the Board's decision and we now affirm.

I.

A.

Hazime, a native and citizen of Lebanon, arrived in this country in 1982 when he was twelve years old, and obtained permanent resident status two years later. Hazime is married to a naturalized U.S. citizen and has a two year old son who is also a U.S. citizen. His parents and five of his siblings live in the United States, but Hazime still has two siblings living in Lebanon.[1] Hazime has a high

---

1. Hazime claims on appeal that his parents and six of his siblings live in the United States, while one brother lives in Africa. However, based on Hazime's sworn testimony the BIA specifically

school education and has completed three semesters of computer training from "SER," a business and technical institute. He has had several jobs since coming to the United States, but is currently self-employed as a used car salesman. Hazime lives in his own house in Dearborn, Michigan.

On July 20, 1989, Hazime was arrested and charged with delivering heroin. Apparently, Hazime was paid $1000 to be the look-out man for the sale of approximately nine ounces (worth $36,000) of heroin. An undercover police officer disrupted the sale and arrested Hazime and his counterparts. As part of a plea agreement, Hazime pled guilty to delivery of less than 50 grams of heroin and was subsequently placed on lifetime probation.

### B.

Deportation proceedings against Hazime began on February 11, 1991, with an order charging him with deportability for having been convicted of a drug related crime. After conceding deportability at an August 2, 1991 hearing, Hazime filed an application for relief under section 212(c), which provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted at the discretion of the Attorney General.

8 U.S.C. § 1182(c). Although on its face the provision appears to apply only to exclusion proceedings, it has been held applicable to deportation proceedings regardless of whether the resident ever left the United States. See *Ayala–Chavez v. INS*, 944 F.2d 638, 640 n. 2 (9th Cir.1991); *Tapia–Acuna v. INS*, 640 F.2d 223, 224–25 (9th Cir.1981); *Montilla v. INS*, 926 F.2d 162, 165 (2d Cir.1991). The immigration judge granted Hazime's request for section 212(c) relief on March 23, 1992.

In deciding for Hazime, the immigration judge cited *Matter of Marin*, 16 I & N Dec. 581, 584 (BIA 1978), which requires a "balance [of] adverse factors evidencing an

alien's undesirability as a permanent resident with the social and humane considerations presented on his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." Because Hazime was convicted of a drug crime, the immigration judge held him to a higher standard by requiring a showing of "unusual or outstanding equities." This higher standard is generally required in cases involving serious negative factors like a drug conviction. *Marin* at 586 n. 4; *Johnson v. INS*, 971 F.2d 340, 344 (9th Cir.1992); *Akinyemi v. INS*, 969 F.2d 285, 288 (7th Cir.1992). The heightened standard for waiver applications by drug offenders has been upheld as "rationally related to the statutory scheme." *Ayala–Chavez*, 944 F.2d at 641.

Despite the higher standard, the immigration judge found that the equities in Hazime's favor outweighed those working against him. Following *Marin*, the judge looked to Hazime's length of residence and family ties in the United States, evidence of hardship to Hazime's family should he be deported, Hazime's employment history, and other evidence of Hazime's good character. The judge determined that a hardship was created on Hazime's wife and child who could not accompany Hazime to Lebanon. The judge also found evidence of Hazime's good character after examining his employment history, various letters of recommendation from members of the community, and receipts from Hazime's donations to charitable organizations. The judge finally considered Hazime's testimony that he had only visited Lebanon for a few short periods since coming to the United States, and that returning would be a hardship. After closely scrutinizing all of this data, the immigration judge granted Hazime's request for section 212(c) relief.

On appeal, the BIA reversed. The BIA also applied the standards of *Marin*, but found that Hazime's drug conviction outweighed any equities in his favor. The BIA conceded that Hazime has "substantial" con-

---

found that two of Hazime's siblings are still living in Lebanon. Since judicial review is limited to facts "solely [in] the administrative record ... if supported by reasonable, substantial, and

probative evidence on the record considered as a whole," 8 U.S.C. § 1105a(a)(4), Hazime is precluded on appeal from claiming that he has no family in Lebanon.

tacts in the United States, but noted that he also has two siblings living in Lebanon. Moreover, in the last few years Hazime has made several trips back to Lebanon and could successfully settle there. As for employment, the BIA found that Hazime's lawful employment was "recent and of short duration," and that he could find similar employment in Lebanon. The BIA disregarded Hazime's various letters of recommendation because they failed to acknowledge his drug conviction. Any steps towards rehabilitation were discounted because they occurred only after Hazime was threatened with deportation, and because Hazime was not forthright at the deportation hearing in discussing his drug offense. With regard to Hazime's conviction, the BIA noted that the United States drug problem "has reached epidemic proportions and it tears the very fabric of American society." Accordingly, the BIA held that Hazime's drug offense outweighed the favorable equities demonstrated at the hearing.

Hazime appealed the decision of the BIA pursuant to 8 U.S.C. § 1105a. Simultaneously, Hazime applied to the Sixth Circuit for a stay of deportation, which was granted on February 26, 1993.

## II.

Hazime argues that the BIA abused its discretion in overruling the immigration judge's decision. He asserts that the immigration judge properly considered and weighed the factors set forth in *Marin* and that they tilted the balance in favor of granting relief from deportation. According to Hazime, the following favorable factors are present in his case: (1) his length of residence and the fact that he entered the United States as a child; (2) his family ties in the United States, especially a wife and minor child; (3) the hardship his wife and child would suffer if he is deported; (4) his employment history and the fact that he owns property; and (5) his rehabilitation since his criminal conviction.

Hazime's argument emphasizes his view that because the immigration judge "observed his demeanor" and "carefully balanced" the evidence, the Board abused its discretion in reversing that decision. This argument appears, by implication, to assert that this court should accord special deference to the immigration judge's decision.

For its part, the Service maintains that Hazime did not establish any outstanding equities favoring relief, and that the seriousness of his crime outweighs the favorable factors that do exist. The Service discounts Hazime's employment record because he has not been employed for any length of time at a particular place of work, but has moved from job to job. Moreover, his present work as a self-employed used car salesman is of very recent origin.

The Service also discounts Hazime's claims of rehabilitation and good moral character. The rehabilitation evidence consisted of acknowledgments from several charities of small cash gifts made *after* his conviction. Significantly, many of the letters attesting to Hazime's good moral character were written by people who either did not know of his conviction or did not acknowledge it.

Hazime also made one of a number of trips to Lebanon shortly before his arrest and apparently had no particular difficulties while there. Furthermore, according to the record, he has relatives living in Lebanon. Thus, the Service argues, the record does not support Hazime's claim that he has no one to turn to for assistance in Lebanon or that he would suffer unusual hardship if deported there. While conceding that Hazime's wife and child will suffer hardship from his deportation, the Service argues that the BIA acted within its discretion in concluding that the seriousness of Hazime's crime outweighed the favorable factors.

## III.

### A.

■ This court and others have recognized the list of factors in *Marin* as providing a framework for determining whether discretionary relief should be granted under section 212(c). See, *e.g.*, *Gonzalez v. INS*, 996 F.2d 804, 807 (6th Cir.1993); *Gouveia v. INS*, 980 F.2d 814, 816 (1st Cir.1992); *Ashby v. INS*, 961 F.2d 555, 557 (5th Cir.1992); *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1247

(7th Cir.1991); *Blackwood v. INS,* 803 F.2d 1165, 1168 (11th Cir.1986). The decision of the BIA denying section 212(c) relief must demonstrate that the Board sufficiently balanced both favorable and unfavorable *Marin* factors. *Ashby,* 961 F.2d at 557–58. The BIA is not required, however, to mention each *Marin* factor relied upon by one applying for section 212(c) relief. *Casalena v. INS,* 984 F.2d 105, 107 (4th Cir.1993). It is enough that the BIA discuss the evidence in such a way as to demonstrate that it considered all probative evidence and did in fact balance the factors.

## B.

■ The court of appeals reviews the denial of an application for a section 212(c) waiver of deportation under an abuse of discretion standard. *Craddock v. INS,* 997 F.2d 1176, 1178 (6th Cir.1993). In determining whether the Board abused its discretion, this court must decide whether the Board's decision was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Balani v. INS,* 669 F.2d 1157, 1161 (6th Cir.1982). The scope of review is "exceedingly narrow" because a lack of statutory standards provides the Attorney General with "unusually broad" discretion. *Ashby,* 961 F.2d at 557. At least two courts have held that it is only necessary that the Board hear, consider and rationally decide the case before it. *Casalena,* 984 F.2d at 107; *Villanueva–Franco v. INS,* 802 F.2d 327, 330 (9th Cir.1986). Nevertheless, the BIA may be reversed if it fails to actually consider "the facts and circumstances respecting each petitioner's claim of extreme hardship." *Zamora–Garcia v. INS,* 737 F.2d 488, 491 (5th Cir.1984). Such a decision would be reversed as arbitrary or capricious.

We find no support for Hazime's suggestion that we should apply a different standard of review in cases where the BIA overturns an immigration judge's decision granting section 212(c) relief. The statute allowing for appeal from the BIA only provides judicial review for "final orders of deporta-

tion." 8 U.S.C. § 1105a(a). In turn, federal regulations provide that in deportation matters "the decision of the Board shall be final." 8 C.F.R. § 3.1(d)(2). Thus, we do not review the immigration judge's decision; judicial review is specifically limited to the decision of the BIA.

■ Other courts of appeals have considered and rejected similar arguments.[2] As the court stated in *Gouveia,* "the Board is not required to defer to an immigration judge's findings of fact or conclusions of law in a deportation/waiver case, and may, if it chooses to do so, review the record *de novo.*" 980 F.2d at 817 (citations omitted). To the same effect, see *Martinez v. INS,* 970 F.2d 973, 974 (1st Cir.1992); *Charlesworth v. INS,* 966 F.2d 1323, 1325 (9th Cir.1992); *Cordoba–Chaves,* 946 F.2d at 1249. A statement of the court in *Blackwood* clearly describes the limit of our review and refutes any claim that a different standard applies in cases where the BIA reverses an immigration judge's decision granting § 212(c) relief:

> Judicial review of denials of discretionary relief incident to deportation proceedings is limited to determining whether there has been an exercise of administrative discretion, and whether the manner of exercise has been arbitrary or capricious. The standard of review remains unchanged by the disagreement between the immigration judge and the Board. If these two interpret the evidence differently, we cannot choose freely between the two interpretations. If the Board's decision is supported by substantial evidence, Congress has mandated that we defer to the Board and affirm. 8 U.S.C.A. § 1105(a); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

803 F.2d at 1168 (citations omitted).

## IV.

■ An examination of the decision of the BIA reveals conclusively that it did not abuse its discretion in this case. The BIA discussed the positive *Marin* factors and conducted the required balancing of those factors against the extremely negative fact of

---

2. This court reached the same conclusion in an unpublished opinion. See *Wadyal v. INS,* 947 F.2d 947 (Table), 1991 WL 224111 (6th Cir. 1991).

Hazime's conviction for a serious drug offense. The Board acknowledged Hazime's family ties in the United States and the hardship likely to be endured by his wife and child. On the other hand, the Board noted Hazime's recent journeys to Lebanon and the residence of his two siblings in concluding that he should be able to readjust to life there. The Board also considered evidence that Hazime's employment record was spotty and emphasized that he has been in his present occupation only for a short time. Furthermore, the BIA reasonably assumed that Hazime's rehabilitation was superficial because most of his charitable contributions came only after threats of deportation. It was also plausible for the Board to find that Hazime's recommendation letters were weak evidence of Hazime's good character because they failed to acknowledge his drug conviction.

Of course, the most critical negative factor was Hazime's drug conviction. The Board's determination that Hazime failed to carry his burden of proving that unusual and outstanding equities exist in this case is neither arbitrary nor capricious. This is not a case where the BIA made its decision "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis...." *Balani*, 669 F.2d at 1161.

The petition for review is denied and the decision of the BIA is affirmed.