92 F.3d 1186
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bozidar SINADINOVSKI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-3730.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1996.
 
 Before: BOGGS and MOORE, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Bozidar Sinadinovski appeals from the decision of the Board of Immigration Appeals denying him a waiver under § 216(c)(4)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1186a(c)(4)(B), based on his alleged good-faith marriage to a citizen that later failed, and declaring him deportable. Because there was substantial evidence in the record to support the Board's conclusion that Sinadinovski's marriage was not entered into in good faith, we affirm the decision of the Board.
 
 
 2
 * Bozidar Sinadinovski, a former resident of Macedonia in the former Yugoslavia, came to the United States after marrying Cindy Vitanovski. Sinadinovski met Ms. Vitanovski when she and her family took a summer vacation in 1989 to her family's ancestral home, Macedonia. Sinadinovski's father and Vitanovski's father apparently knew each other before Vitanovski's father emigrated to the United States. This apparently smoothed the way for a quick marriage, even though Vitanovski was only 17 years old at the time. Within two weeks of their meeting, Sinadinovski secured the blessing of Vitanovski's relatives, and permission of her parents (necessary because of her age), and married Vitanovski on June 6, 1989. After a brief honeymoon, the couple applied for and received Sinadinovski's immigrant visa. They returned to Vitanovski's native Detroit and moved in with Vitanovski's parents.
 
 
 3
 Vitanovski apparently was less than happy with the marriage, and started behaving in a manner inconsistent with wedlock. Specifically, after only three days at her parents' home, Vitanovski left Sinadinovski and ran away from her parents' home to stay with an old boyfriend. Her parents reported her to the police as a missing person. Police reports show that she had similarly run away from her parents' home twice earlier in the year. When Vitanovski came back 29 days later, she told Sinadinovski that she "did not love him anymore," and that she had gone back to her former boyfriend. Despite her parents' efforts to reconcile the two, Vitanovski left the marital home two more times over the next three months, for periods of two weeks and ten days respectively. Sinadinovski eventually moved out of his in-laws' home. The couple separated for good in February 1990, and Vitanovski filed for divorce in June. The divorce was granted on September 24, 1990.
 
 
 4
 There is little to indicate that this marriage was genuine. The marriage saw (1) no children born (2) no joint purchases; (3) no joint ownership of property, though Sinadinovski bought a car on his own during the "marriage"; (4) no evidence of a joint tax return; and (5) an admission under oath by Sinadinovski that he had no documentary evidence "that would establish or tend to establish that [he] married Cindy Vitanovski in good faith."
 
 
 5
 Sinadinovski also entered into a second marriage while in the United States, this time to Gordana Pavlovski, a Canadian who became a naturalized American citizen. The two married on July 14, 1992. Pavlovski filed a visa petition on his behalf on August 6, 1992, but on July 29, 1993, Pavlovski appeared at the Detroit INS office and swore to an affidavit stating that Sinadinovski told her he only married her to get a green card and would divorce her when he did so. She signed another affidavit, which her sister witnessed, three days later. This second affidavit explained that Sinadinovski told her that both his marriages were to obtain a green card and that he explained that he could fool the immigration judges. Pavlovski then withdrew her visa petition for Sinadinovski, and filed for divorce on August 12, 1993. The divorce was granted by consent judgment on April 28, 1994. At a later hearing to determine Sinadinovski's immigration status, Pavlovski recanted under oath the two statements she had sworn, saying they were not true.
 
 
 6
 Following Sinadinovski's first divorce, the INS gave notice on December 26, 1990, of its intent to terminate his conditional visa status, and did so on January 23, 1991. On March 22, 1991, Sinadinovski filed an application for a waiver pursuant to INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4). Sinadinovski had a waiver interview, and the INS denied his waiver request. Soon after, the INS charged that Sinadinovski secured his visa fraudulently, by entering into a bad-faith marriage.
 
 
 7
 This charge resulted in a deportation hearing before an Immigration Judge on October 20, 1992. There, Sinadinovski renewed his waiver application on the grounds of both extreme hardship and good-faith marriage. The Immigration Judge granted Sinadinovski's request on the basis that he entered into his first marriage in good faith. The INS appealed, but before the BIA issued its decision in the appeal, the INS had the original hearing reopened because of the statements by Sinadinovski's second wife, Gordona Pavlovski. When the hearing was reopened, however, Pavlovski recanted her statements that Sinadinovski said he married her only to obtain a green card and that he could fool the immigration authorities. The Immigration Judge reinstated his original decision to grant the good-faith marriage waiver, and the INS again appealed to the Board. The Board reversed the Immigration Judge, finding that Sinadinovski's first marriage was not entered into in good faith, and ordered Sinadinovski deported. Sinadinovski now appeals from that order.
 
 II
 
 8
 We are limited to reviewing decisions of the Board of Immigration Appeals to ensure that the Board employed the proper standard of proof, and that its decision was supported by substantial evidence. Klawitter v. I.N.S., 970 F.2d 149 (6th Cir.1992).
 
 III
 
 9
 Since Sinadinovski does not challenge the legal standards or standards of proof employed by the Board, and instead argues that the facts of his case warrant a different result, our review ends when we are satisfied that substantial evidence supported the Board's decision.
 
 
 10
 A brief review of the legal standards involved in this type of determination helps in understanding the reasonableness of the Board's action. Under 8 U.S.C. § 1186a(a)(1) and (g)(1)(A), an alien who is admitted to the United States on the basis of marriage to a citizen only obtains his resident status on a conditional basis. The conditional status may be revoked by the Attorney General if the marriage leading to admission is judicially terminated or annulled before the second anniversary of the alien's obtaining the status. 8 U.S.C. § 1186a(a)(1), (b)(1)(A) & (g)(1)(A). If the alien requests a hearing, the Attorney General must prove that the marriage was so ended within two years. However, even after the Attorney General has done this (a point not contested here), an alien can, at a deportation hearing, obtain a waiver of deportation if he can demonstrate either that (a) deportation would work an extreme hardship; or (b) he entered into the marriage in good faith. 8 U.S.C. § 1186a(c)(4)(A) and (B). Sinadinovski's marriage was presumptively fraudulent until he met his burden to prove otherwise by evidence showing the good-faith nature of the marriage. Dallo v. INS, 765 F.2d 581, 586 (6th Cir.1985). In order to meet his burden, Sinadinovski had to show that "the bride and groom ... intend[ed] to establish a life together at the time they were married." Bark v. INS, 511 F.2d 1200, 1201 (9th Cir.1975).
 
 
 11
 The evidence supporting the Board's decision that Sinadinovski's first marriage was entered into in bad faith is considerable. Circumstances of the marriage alone suggest an ulterior motive (Sinadinovski was 24 or more; Vitanovski was only 17, had a boyfriend at home, and was on vacation with her parents when she met Sinadinovski; and the marriage began to be organized after they had only known each other for two weeks). When they returned to Detroit, Vitanovski left the marital home three times for days at a time and told Sinadinovski that she did not love him, only agreeing to some form of reconciliation (that did not last) because of parental pressure. When they were in Detroit, there is no evidence of a shared financial life together--no combined assets or liabilities, no joint purchases or tax returns, no insurance policies. Nor was there any evidence of a shared "emotional" or "family" life together--no evidence of affection, letters, gifts, or children. There was evidence, albeit in the form of recanted affidavits, that Sinadinovski entered into the relationships solely to defeat immigration laws and because he thought he could "fool" the system. Despite the recantations, the Board was entitled to believe the original sworn statements.
 
 
 12
 Sinadinovski, for his part, produced virtually no evidence to support the genuine nature of his marriage to Vitanovski. He presented his own testimony and that of a few cousins and friends. He presented no documentary evidence other than his divorce certificate. He claims that the certificate proved the bona fide nature of the marriage because it showed that Vitanovski had not insisted upon the reason for the divorce being listed as "fraud." The Board was also concerned with inconsistencies in his testimony. Given that the burden was on Sinadinovski, this dearth of evidence alone would provide "substantial evidence" for the Board's decision.
 
 
 13
 Sinadinovski, however, seems to argue that we should "reinstate" the decisions of the ALJ that granted him the waiver, on the grounds that the Board had insufficient cause to overrule the ALJ. This is not the role of this court. Our role is to make sure that there is a rational basis for the BIA's decision. Hazime v. Immigration and Naturalization Service, 17 F.3d 136, 140 (6th Cir.1994). Because we are convinced that the Board had substantial evidence to support its finding that Sinadinovski entered into his marriage with Vitanovski in bad faith, we AFFIRM the Board's decision in all respects.
 
 
 
 *
 The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation