**Luc QAFALIJAJ, Gjyste Qafalijaj, Mirela Qafalijaj, Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**Nos. 02–3954, 02–3955, 02–3956.**

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2004.

Before BOGGS, Chief Judge, and MOORE, Circuit Judge; and QUIST,

District Judge.*

QUIST, District Judge.

Petitioners Luc Qafalijaj, Gjyste Qafalijaj, and Mirela Qafalijaj petition for review of a final order of removal issued by the Board of Immigration Appeals (BIA), which affirmed the Immigration Judge's (IJ) denial of their requests for asylum. Petitioners claim that the BIA's summary review of the IJ's decision violated their due process rights and, alternatively, that there is no substantial evidence to support the IJ's denial of their asylum claim. For the reasons stated below, the petition is DENIED.

## BACKGROUND

The members of the Qafalijaj family are natives and citizens of Albania. The husband, Luc Qafalijaj, and the wife, Gjyste Qafalijaj, entered the United States on August 29, 2000, as non-immigrant visitors for pleasure with authorization to remain for a period not beyond February 28, 2001. Their daughter, Mirela Qafalijaj, entered into the United States on or about January 7, 2000, without being admitted or paroled. The Immigration and Naturalization Service (INS) started removal proceedings on April 12, 2001, against Mirela as an alien in the United States without having been admitted or paroled and against Luc and Gjyste as being removable for having remained longer than permitted.

Lead petitioner Luc Qafalijaj (hereinafter, "Petitioner") has applied for asylum. A spouse or child of someone who has been granted asylum may be granted the same status as that person. Petitioner contends that he should receive asylum because he suffered persecution at the hands of the regime due to his membership in and political activity on behalf of the Albanian Democratic Party and because he has a well-grounded fear that he would again be persecuted should he return to Albania. His claim that he suffered persecution based on his political opinions and activities turns on several allegations, including that he was placed in an internment camp by the former communist regime; he was later arrested and beaten by elements of the succeeding socialist regime because of his Democratic Party activism; his daughter was kidnaped and raped; and his bedroom was bombed. The IJ heard Petitioner's and his daughter's testimony and viewed Petitioner's application documents and other forms of documentary evidence which Petitioner submitted in an effort to corroborate his testimony.

The IJ found Petitioner's testimony not credible because it was internally inconsistent and contradicted Petitioner's application documents and the documentary evidence. The IJ concluded that Petitioner failed to make the requisite showing of past persecution or a well-founded fear of future persecution. Consequently, the IJ held that Petitioner was not a refugee and denied his asylum application. Petitioner and his family were ordered removed from the United States. A BIA member summarily affirmed the IJ's decision with a one-sentence opinion. Petitioner then filed the petition for review now before the court. He makes three arguments: (1) the BIA's summary affirmance of the IJ's decision without a separate opinion constitutes a failure to engage in meaningful review and thus violates the Fifth Amendment's guarantee of due process rights; (2) the IJ and BIA disregarded and distorted substantial evidence supporting Pe-

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

titioner's asylum application; and (3) the IJ and BIA abused their discretion in denying Petitioner's asylum claim and withholding the removal claim.

## STANDARD OF REVIEW

The IJ, acting for the Attorney General,[1] has discretion to grant asylum to any alien who qualifies as a "refugee." 8 U.S.C. § 1158(a) & (b). The statute defines a refugee as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Even if the alien qualifies as a refugee, the IJ may, in his discretion, deny asylum. 8 U.S.C. § 1158(a) & (b). Thus, fielding a request for asylum "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the [IJ]." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir.2003) (internal quotation marks and citation omitted).

At the first step, we review the IJ's factual determination as to whether the alien qualifies as a refugee under the substantial evidence test.[2] The IJ's decision will be upheld unless, in view of the evidence presented, "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir.1992) (a petition for review of an asylum rejection will be granted only if the evidence "not only supports a contrary conclusion, but indeed *compels* it") (emphasis in original). Credibility determinations are findings of fact, falling within the

---

1. The statute refers to the Attorney General. Since the Attorney General has delegated his immigration authority to the BIA and IJ, we will refer to the IJ rather than the Attorney General.

2. We recently discussed developments respecting the substantial evidence standard in *Yu v. Ashcroft*, 364 F.3d 700, 702–703 (6th Cir.2004). As we noted, the Supreme Court has stated that the IJ's determination on eligibility for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). The Court was directly quoting 8 U.S.C. § 1105a(a)(4), which provided that the IJ's findings of fact had to be supported by this type of evidence. The Court went on to hold that the IJ would be reversed only if "the evidence presented by [the alien] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed," citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939), a case documenting "substantial evidence" decisions for administrative orders. *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. at 815.

In 1996, 8 U.S.C. § 1105a(a)(4) was repealed and replaced by 8 U.S.C. § 1252(b)(4). Nevertheless, many circuits have continued to cite the "supportable by reasonable, substantial, and probative evidence" language as controlling. Given that this language was repealed, we clarified in *Yu* that under the now-applicable standard of review, an IJ's findings of fact are " 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.' " 364 F.3d at 702 (quoting 8 U.S.C. § 1252(b)(4)(B)). Courts have found that § 1252(b)(4)(B) basically codifies the Supreme Court's substantial evidence standard. *See Dia v. Ashcroft*, 353 F.3d 228, 247–49 (3d Cir.2003). Thus, our jurisprudence, except for reiteration of the repealed "supported by reasonable, substantial and probative evidence" language, remains good law. *See Ouda*, 324 F.3d at 451 (finding that the IJ's determination should be upheld unless evidence "not only supports a contrary conclusion, but indeed *compels* it," and "[a]s such, the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution") (citation omitted); *accord Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir.1998).

first step of determining whether an alien qualifies as a refugee and subject to review only for whether the IJ's finding is supported by substantial evidence. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir.2004) (citing *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir.2003)). Regarding the second step of the asylum inquiry, the discretionary judgment to grant asylum to a refugee is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

Under our deferential standard of review, we may not reverse the BIA's determination simply because we would have decided the matter differently. *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir.2004) (citing *Klawitter*, 970 F.2d at 151–52). Where, as here, the BIA adopts the decision of the IJ in lieu of issuing its own opinion, we treat the IJ's decision as the final agency decision and review it directly. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir.2003). Our review is restricted to the contents of the administrative record. 8 U.S.C. § 1252(b)(4)(A).

## DISCUSSION

### A. Fifth Amendment—Due Process

■ Petitioner first argues that the procedures the IJ and BIA used to adjudicate this case violated his due process rights. Petitioner challenges on due process grounds the BIA's practice of summarily affirming the decisions of IJs without rendering their own opinions, also known as the streamlining procedure. He argues that the practice of summary affirmance "is violative of both the spirit and the letter" of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that due process requires a meaningful right to be heard), "does not appear to comport with our historical notions of due process," and deprived him of meaningful review of the IJ's decision.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Aliens who have entered the United States, both lawfully and unlawfully, cannot be "expelled" without the government following established procedures consistent with the requirements of due process. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953). "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001). We review claims of due process violations in deportation proceedings *de novo*. *Id.*

Petitioner acknowledges that under the existing regulatory arrangement, the BIA has authority pursuant to 8 C.F.R. § 1003.1(a)(7) to follow streamlined procedures. The Attorney General has authorized a single BIA member to affirm, without a separate written opinion, the results of an IJ's decision, under circumstances in which the member determines:

(1) that the result reached in the decision under review was correct;

(2) that any errors in the decision under review were harmless or nonmaterial; and

(3) that (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.

8 C.F.R. § 1003.1(a)(7)(ii). If the BIA member determines that the IJ's decision should be affirmed without opinion, the BIA issues an order containing the follow-

ing statement: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination." 8 C.F.R. § 1003.1(a)(7)(iii). The member's order "shall not include further explanation or reasoning." *Id.* "Such an order approves the result reached in the decision below; it does not necessarily imply approval of all the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the [IJ] were harmless or nonmaterial." *Id.* If an appeal does not meet the criteria contained in § 1003.1(a)(7), a three-member panel of the BIA must review the petition. 8 C.F.R. § 1003.1(a)(7)(iv).

In the comments to the proposed rule, the DOJ identified the impetus behind permitting a summary affirmance by a single BIA member:

> To operate effectively in an environment where over 28,000 appeals and motions are filed yearly, the Board must have discretion over the methods by which it handles its cases. The process of screening, assigning, tracking, drafting, revising, and circulating cases is extremely time consuming. Even in routine cases in which all Panel Members agree that the result reached below was correct, disagreements concerning the rationale or style of a draft decision can require significant time to resolve. The Department has determined that the Board's resources are better spent on cases where there is a reasonable possibility of reversible error in the result reached below.

Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed. Reg. 56135, 56137 (Oct. 18, 1999). To remedy the problems resulting from the dramatic increase in appeals, the Attorney General sought to implement a new streamlined appellate review system because "in a significant number of appeals and motions filed with the Board, a single appellate adjudicator can reliably determine that the result reached by the adjudicator below is correct and should not be changed on appeal." *Id.* at 56135. By expressly prohibiting the single Board member from including his or her own explanation or reasons within the order, the regulation further alleviates the burden on the Board.

We recently considered a due process challenge to streamlining similar to Petitioner's in *Denko v. INS,* 351 F.3d 717 (6th Cir.2003). We held: "As have many circuits before us, we now join the recent trend of our sister circuits by concluding that the BIA's streamlining procedures do not themselves alone violate an alien's rights to due process." *Id.* at 729–30 (citing *Carriche v. Ashcroft,* 350 F.3d 845, 848 (9th Cir.2003); *Georgis v. Ashcroft,* 328 F.3d 962, 967 (7th Cir.2003) ("Since we review directly the decision of the IJ when a case comes to us from the BIA pursuant to § 1003.1(a)(7), our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated."); *Mendoza v. U.S. Attorney Gen.,* 327 F.3d 1283, 1289 (11th Cir.2003); *Soadjede v. Ashcroft,* 324 F.3d 830, 832 (5th Cir.2003); *Albathani v. INS,* 318 F.3d 365, 376–79 (1st Cir.2003)).[3]

We concluded in *Denko* that "it is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion." 351 F.3d at 730 (internal quotation marks and citation omitted). *See also Guentchev v. INS,* 77 F.3d 1036, 1038 (7th

---

**3.** Petitioner cites numerous cases from multiple jurisdictions criticizing summary affirmance of IJs' decisions, but each of these cases was decided *prior* to the adoption of the streamlining procedure set forth in 8 C.F.R. § 1003.1(a)(7).

Cir.1996) ("To adopt someone else's reasoned explanation *is* to give reasons."). As we went on to explain,

> Even if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision. Thus, [the petitioner] receives the "full and fair" review that she is entitled to receive. *Huicochea–Gomez,* 237 F.3d at 699; *see Georgis v. Ashcroft,* 328 F.3d at 967.

Moreover, "[i]n functional terms, if the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal." *Albathani,* 318 F.3d at 378; *see also Tuhin v. Ashcroft,* 60 Fed.Appx. 615, 617–18 (7th Cir.2003) (unpublished order) ("The BIA's summary affirmance of a flawed decision by an IJ, however, may lead us to conclude that the BIA's decision is insufficient."). Thus, we are not forced to guess at the rationale of the BIA, but instead we evaluate the IJ's explanation as that of the Board; the Board cannot rely on an unarticulated basis for its determination. *See Fed. Power Comm'n v. Texaco, Inc.,* 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974) ("An agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself."). *See generally Albathani,* 318 F.3d at 377 (noting that "[t]he summary affirmance scheme does create … problems [for review], but they do not render the scheme a violation of due process or render judicial review impossible"); *see also Carriche,* 350 F.3d at 850, 2003 WL 22770121, at *4 ("[T]he streamlining procedures do not compromise our ability to review the INS's decision, to the extent we have jurisdiction to do so, because we can review the IJ's decision directly.").

*Denko,* 351 F.3d at 730. Thus, Petitioner's due process rights are not violated simply because the BIA did not issue a reasoned explanation. *Id.; see also id.* n. 10 (noting that streamlined review under § 1003.1(a)(7) comports with the requirements of due process as defined in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), i.e., it provides a meaningful opportunity to be heard).

As we will explain in Part B., when assessing the merits of the Qafalijajs' petition for review, the dispositive issue in this case—whether the IJ's adverse credibility determination is supported by substantial evidence—is "controlled by precedent and does not require application to novel facts." *Denko,* 351 F.3d at 732. Moreover, the IJ's decision was correct, and any errors the IJ may have committed "are harmless or nonmaterial." *Id.* at 731. "Because the facts and legal issues of [Petitioners'] case fit precisely within the boundaries of § 1003.1(a)(7)," the BIA properly invoked the summary affirmance procedure in this case. *Id.* at 732.

Accordingly, we reject Petitioner's attack on the constitutionality of the streamlining procedure and its use in this case.

**B. Substantial Evidence of Persecution**

Petitioner argues in the alternative that even if the streamlined procedure is constitutionally permissible, the IJ reached the wrong outcome in this case by concluding that Petitioner has demonstrated neither past persecution nor a well-founded fear of future persecution. The decision, Petitioner contends, fails to pass muster under the substantial evidence standard by which we review an IJ's determination of refugee status. In Petitioner's view, the IJ erred in three ways: first, by misinterpreting Petitioner's testimony; second, by mischaracterizing documentary evidence; and

third, by ignoring obvious contradictions in country materials. For these reasons, Petitioner says, the IJ's decision to deny Petitioner's claim for asylum and to withhold removal lacks evidentiary support.

### 1. Ways of Proving Persecution

One way an asylum applicant may achieve refugee status is by proving past persecution on account of his race, religion, nationality, membership in a particular social group, or, as is relevant in this case, political opinion. 8 U.S.C. § 1253(h)(1). Persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995) (citations and quotation marks omitted). Persecution entails punishment, infliction of harm, or a significant deprivation of liberty; "harassment or discrimination without more does not rise to the level of persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998) (citations omitted).

If the applicant establishes past persecution, the applicant is entitled to a presumption of a well-founded fear of future persecution, and the burden shifts to the government to show by a preponderance of evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(1)(i)(A); *see also Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir.2004). If an asylum applicant does not prove past persecution, or that evidence is rebutted because of changed country conditions, no presumption of future persecution arises. 8 C.F.R. § 208.13(b)(1). "Instead, the applicant must show a good reason to fear future persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." *Molina–Estrada v. INS*, 293 F.3d 1089, 1094 (9th Cir.2002) (citation and internal punctuation omitted).

Proof of a well-founded fear of future persecution merits a finding of refugee status and requires the applicant to show that: (1) he has a fear of persecution in his country on account of race, religion, nationality, membership in a social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he were returned to that country; and (3) he is unable or unwilling to return to that country because of such fear. *Mikhailevitch*, 146 F.3d at 389; 8 C.F.R. § 208.13(b)(2). The applicant's fear must be both subjectively genuine and objectively reasonable. *See Perkovic v. INS*, 33 F.3d 615, 620–21 (6th Cir.1994) ("an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable") (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430–31, 107 S.Ct. 1207, 1212–13, 1217, 94 L.Ed.2d 434 (1987)). "A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" *Id.* at 621 (quoting *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. at 1213).

The alien may meet his burden of proving persecution through *credible* testimony without corroboration. 8 C.F.R. § 208.13(a). "[A]n alien is not required to produce evidence of persecution; the alien's own testimony can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible

and coherent account of the basis for his fear." *Perkovic,* 33 F.3d at 621 (citation and internal quotation marks omitted). "Because a well-founded fear of persecution can be based upon what has happened to others who are similarly situated, it is 'necessary, in considering an applicant's asylum petition, to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities." ' *Ali v. Ashcroft,* 366 F.3d 407, 411 (6th Cir.2004) (quoting *Perkovic,* 33 F.3d at 621). We explained in *Ali* that conditions of political upheaval which affect the populace as a whole or in large part, to include civil unrest between competing political factions, are generally insufficient to establish eligibility because such unrest is not persecution. *Id.* at 410 (citing *Meghani v. INS,* 236 F.3d 843, 847 (7th Cir.2001)).

## 2. The IJ's Opinion Finding Petitioner Failed to Prove Persecution

█ As discussed above, under the substantial evidence standard, the IJ's determination should be upheld unless evidence " 'not only supports a contrary conclusion, but indeed compels it,' " and " '[a]s such, the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution.' " *Yu v. Ashcroft,* 364 F.3d 700, 702–703 (6th Cir.2004)(quoting *Ouda v. INS,* 324 F.3d 445, 451 (6th Cir.2003)). For the following reasons, we hold that substantial evidence supports the IJ's decision that Petitioner has failed to prove past persecution and has not demonstrated a well-founded fear of future persecution. Therefore, we uphold the IJ's determination.

The IJ based his ruling in large measure on his determination that Petitioner lacked credibility. Once again, credibility determinations are findings of fact to be reviewed under the substantial evidence test. The IJ doubted Petitioner's credibility because his testimony was at numerous times internally inconsistent, at odds with statements he made in his asylum application, or contradictory to his daughter's testimony. For example, with respect to the alleged attack on his daughter Mirela, Petitioner offered conflicting versions of events as to when she was purportedly attacked, whether or how quickly he was aware of her kidnaping, whether or how quickly the kidnaping was reported to authorities, and when Mirela came to the United States. Likewise, the IJ was skeptical of Petitioner's testimony that he was arrested while speaking at a rally in September 1999, doubting Petitioner's story that he was the third speaker and yet other speakers followed him and were not arrested. Also, the IJ remarked on a contradiction in Petitioner's testimony when he stated that he was not politically active after 1999, but later admitted giving a speech at a March 2000 rally. In light of the inconsistencies and contradictions arising in Petitioner's testimony, the IJ found him to be "an inherently incredible person."

Petitioner complains that the IJ misinterpreted his testimony, which he says was distorted by faults in the interpretation process and the "unfriendly" courtroom environment. However, Petitioner has pointed to no specific errors by either the interpreter or the judge. He merely speculates that the "abstractions" inherent in interpreting between two languages obscured the questions and answers, and he baldly asserts that the IJ assumed the mantle of interpreter for himself and reached whatever result fit his preconceived notions. We find these unsubstantiated challenges inadequate to warrant overturning the IJ's credibility determination.

In addition, Petitioner asserts that any inconsistencies in the testimony are merely minor. We disagree; some of the discrepancies cited by the IJ in support of his adverse credibility determination are in fact significant. Moreover, even if other inconsistencies are only "minor," their cumulative effect buttresses the IJ's adverse credibility determination based upon the more significant discrepancies. *See, e.g., Yu,* 364 F.3d at 703–704 (listing both "major inconsistencies" and "minor inconsistencies" and stating, "[t]aking all these [major and minor] implausibilities and inconsistencies together, we find substantial evidence supporting the IJ's reservations about Yu's credibility"). Further support for the IJ's adverse credibility determination comes from Petitioner's willingness to "turn[ ] on a dime" when confronted with inconsistencies between his testimony at the hearing and his written asylum application. *See id.* at 704. In sum, we cannot say that every "reasonable adjudicator would be compelled" to disagree with the IJ's adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B); *see also Elias–Zacarias,* 502 U.S. at 483–84, 112 S.Ct. at 817.

Compounding the impact of Petitioner's credibility problems, the IJ also found that the documentary evidence and other testimony Petitioner introduced in an effort to corroborate his claim "raised more questions about his story than he could possibly resolve." The IJ remarked that various portions of the documentary evidence suffered defects: some of it was inconsistent with Petitioner's testimony, some was undated, some was not given under oath, and there were severe translation problems. For example, Petitioner submitted a statement purportedly from Fred Sterkaj, chairman of the Albanian Democratic Party. In addition to not being properly translated, the Sterkaj statement gave no indication of how Sterkaj had personal knowledge of most of the events it discussed, and what is more, there was no indication of how the document got to the United States. Moreover, the IJ found that the substance of the document was on its face inconsistent with Petitioner's testimony and other evidence. Two "affidavits" Petitioner submitted bore translation problems, were not made under oath, and only discussed events occurring prior to 1997, well before many of the events Petitioner says caused him to leave Albania. Next, the IJ pointed out that Mirela's account of the alleged kidnaping was "diametrically opposed to her father's testimony." Finally, the IJ expressed doubt about Petitioner's assertion that his bedroom was bombed and questioned the legitimacy of a newspaper article on the alleged bombing, noting the State Department's caution that the Albanian press is notoriously sensational and that one can "purchase" an article saying whatever one desires. The IJ stated that he did not believe Petitioner's testimony that he did not pay for the article to be written. Summing up the problems with Petitioner's efforts to corroborate his testimony, the IJ concluded, "this case just cries out for some credible corroboration and there just is not any. In fact, the corroboration torpedoes respondent's credibility by and large."

Petitioner counters that the IJ "mischaracterized" the documentary evidence and focused too acutely on the inconsistencies that emerged. The inconsistencies are only minor or slight, he argues. Petitioner also urges that the IJ was overly fastidious in requiring authentication of the documents submitted. In any event, he recounts that corroboration is not even required to prove an asylum case. While that may be true, before assessing the documentary evidence, the IJ had already determined that Petitioner's testimony was

not sufficiently believable, consistent, and detailed to provide a plausible and coherent basis for granting asylum. *See Perkovic*, 33 F.3d at 621. Instead of ameliorating the credibility concerns resulting from Petitioner's testimony, the IJ found that the documentary materials only bolstered the conclusion that Petitioner could not be believed.

The IJ also referenced State Department publications for additional reasons to doubt Petitioner's claims that he suffered persecution shortly before departing Albania and that conditions in the country were such that he would again be persecuted (or even, according to him, killed) should he return. A State Department profile on Albania stated that although there was some violence against Democratic Party members in Albania in 2000, it was not specifically political in orientation. Another State Department report noted that given the return to normalcy in Albania these days, it is unlikely that many asylum seekers will have credible claims to fear of persecution. Petitioner disputes the State Department resources, pointing to an Amnesty International report critical of human rights conditions in Albania, and also citing cases acknowledging that State Department publications may be less than candid in criticizing countries with which the United States seeks to maintain advantageous diplomatic relations. For the IJ to favor the State Department's materials over Petitioner's submissions constitutes, in Petitioner's view, "logical shortcuts, chicanery, [and] sophistry." We find, however, that the IJ was well within his discretion to credit the State Department reports. *See, e.g., Mar-*

*cu v. INS*, 147 F.3d 1078, 1082 (9th Cir. 1998) (holding that a Department of State country report was "the most appropriate" and "perhaps the best resource" in determining whether substantial evidence supported the BIA's decision). In any event, although the Amnesty International report criticizes Albania's human rights environment, it does not itself prove that Petitioner would face persecution on account of his political opinions should he return.

Some of what Petitioner says may have merit. Perhaps some of his testimony is credible, and perhaps some of the documentary evidence corroborates his account. However, we are satisfied that none of Petitioner's evidence is so strong that it overcomes the adverse credibility finding and *compels* a conclusion different from what the IJ reached. *See Yu*, 364 F.3d at 704 ("Yu's explanations provide some support against the IJ's adverse credibility determination, but there is nothing in Yu's explanations that meet [sic] the high standard of *compelling* a contrary result."). The IJ justified his determination with several grounds in the record. Petitioner fails to show, as he must for us to overturn the IJ's decision, that no reasonable factfinder could fail to find the requisite past persecution or fear of future persecution. 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 704 ("Although some of the IJ's grounds seem weak when the discrepancies are viewed in the context of the surrounding record, we cannot say that a reasonable adjudicator would be compelled to conclude to the contrary.") (internal quotation marks and citation omitted).[4]

---

**4.** The IJ opined, "parenthetically," that even if Petitioner's testimony were accepted as true, it would not prove persecution. In the IJ's words,

    And even if these incidents happened, all of his supposition about why they happened is

merely that; merely supposition. And, accordingly, the Court finds that respondent has not demonstrated past persecution. He has not demonstrated either subjectively or objectively it's more likely or not that he would be persecuted if he were to return to

### 3. Withholding of Removal

Removal (formerly known as deportation) will be withheld to a particular country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The standard [of proof] for withholding of removal is more stringent than the well-founded fear standard of asylum in that it requires the applicant to show a greater likelihood of persecution." *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir.2001). To qualify for withholding of removal, the alien must prove a "clear probability" of persecution, *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984), or that "it is more likely than not" that he will be persecuted on account of an enumerated ground, 8 C.F.R. § 208.16(b). Because Petitioner has failed to demonstrate persecution or a well-founded fear of persecution based on his political opinions sufficient to support asylum, his request for withholding of deportation must also fail. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir.2004) ("Because substantial evidence supports the Board's determination that Petitioner is ineligible for asylum, it therefore follows that he cannot satisfy the more stringent standard for withholding of deportation.").

### C. Abuse of Discretion Claim

Petitioner's final argument is that the IJ and BIA abused their discretion in deny-ing his asylum and withholding of removal claims. "The [BIA's] discretion is broad but it is not unlimited. It may not exercise its discretion in a way that is arbitrary, irrational or contrary to law." *Daneshvar v. Ashcroft*, 355 F.3d 615, 625–26 (6th Cir.2004). As this Court has further explained,

> In determining whether the [BIA] abused its discretion, this court must decide whether the [BIA's] decision was made without a rational explanation, inexplicably departed from established policies or rested on an impermissible basis, such as invidious discrimination.... The scope of review is exceedingly narrow because a lack of statutory standards provides the Attorney General with unusually broad discretion. At least two courts have held that it is only necessary that the Board hear, consider and rationally decide the case before it.... Nevertheless, the BIA may be reversed if it fails to actually consider the facts and circumstances respecting each petitioner's claim.... Such a decision would be reversed as arbitrary or capricious.

*Hazime v. INS*, 17 F.3d 136, 140 (6th Cir.1994) (internal quotation marks and citations omitted).

Petitioner asserts that the IJ's decision appears "more irrational than rational," and that "we have no idea what the ratio-

---

Albania, and he certainly hasn't demonstrated that it's more likely than not that he or any member of his family would be persecuted or tortured if they were to return along with him to Albania. Accordingly, even if you believe the latest events of respondent's application, it would all similarly be denied.

We uphold the IJ's decision based on his adverse credibility determination and thus need not inquire whether, if everything Petitioner says is true, he has proved persecution.

However, we note that an asylum applicant does not need to prove he would "more likely than not" suffer persecution: "A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.' " *Perkovic*, 33 F.3d at 621 (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987)).

nale is behind the BIA's decision." Moreover, he contends that the BIA's summary affirmance policy is arbitrary and capricious, violates due process, and deprived him of meaningful review. These arguments appear to be a rehashing of Petitioner's earlier arguments, which the Court has already rejected. The streamlining process presents on due process problems. The 37–page transcription of the IJ's decisions sets forth his reasons for finding that Petitioner lacked credibility and thus failed to prove persecution, and we uphold this determination under the substantial evidence standard. Accordingly, we reject Petitioner's abuse of discretion claim.

## CONCLUSION

For the reasons stated above, the petition for review of the IJ's and BIA's decision to deny Petitioner asylum and withhold removal is DENIED.